James Earl Pincheon was found guilty by a jury of interference with the custody of a child, J. K., in violation of §13A-6-45, Ala. Code 1975, and of rape in the second degree of M. K., in violation of § 13A-6-62, Ala. Code 1975. Pincheon was sentenced to 10 years' imprisonment on the interference-with-custody count and to 20 years' imprisonment on the second-degree-rape count, with the sentences to run concurrently. The Court of Criminal Appeals, on May 8, 1998, affirmed, by an unpublished memorandum.Pincheon v. State (No. CR-97-0505), 738 So.2d 940 (Ala.Crim.App. 1998) (table). We reverse and remand.
In 1994, Pincheon, an African-American male who was a student at a junior college in Marion County, became friends with J.K., a white female high school student. J.K.'s parents did not approve of her relationship with Pincheon. On October 28, 1994, J.K.'s father charged by affidavit and warrant that Pincheon did "interfere, knowingly, with custody of minor child, J.K., in violation of § 12-15-15, Code of Alabama." Pincheon was arrested on the same day; he was released on a $1,000 bond two days later. The "Alabama Uniform Arrest Report" cites the case number as "DC-95-231." After his arrest, Pincheon left Marion County and returned to his home in Huntsville.
On March 13, 1995, the State filed a motion to amend the conditions of bond in case no. DC-95-231. The motion charged: "2. That since the defendant has been released from custody he has continued to interfere with said custody." This motion was set for a hearing on April 17, 1995. The order setting the hearing was served upon Pincheon on March 29, 1995, at his home in Huntsville. *Page 1220 
Grand Jury No. 69 filed an indictment in the circuit clerk's office on April 17, 1995. It stated:
 "The grand jury of [Marion] County charge, before the finding of this indictment, JAMES EARL PINCHEON, whose name is otherwise unknown to the Grand Jury, did remove, conceal or cause to be removed or concealed, or attempt so to do, a delinquent or dependent child or one in need of supervision to wit: [J.K.], in violation of Section 12-15-15 of the Code of Alabama, against the peace and dignity of the State of Alabama."
Written across the top of the indictment are case number notations: "CC-95-77" and "DC-95-231."
On July 27, 1995, Pincheon filed a "Waiver of Arraignment and Written Plea of Not Guilty" in case no. CC-95-77. On August 14, 1995, Pincheon filed a request for production and disclosure in that same case. (Apparently, the prosecutor never responded, because Pincheon's attorney, Alphonso Beckles, sent a letter dated April 28, 1997, to the clerk of the court asking that a "motion to compel" be filed in case no. CC-95-77 before the case came to trial.)
The testimony indicated that in August 1995, after J.K. had completed high school, she moved to Huntsville, determined to live with Pincheon. J.K. testified that she and Pincheon consider themselves to have a common-law marriage. She was pregnant with his child at the time of the trial. At Easter in 1996, Pincheon and J.K. went to Hamilton so that J.K. could visit her mother and her sister, M.K. On Easter Sunday afternoon, J.K. visited with her mother and M.K. at a McDonald's restaurant, where her mother was working. That night J.K. and Pincheon stayed in a motel in Hamilton. Early the next morning, J.K. and Pincheon again went to the McDonald's restaurant to see J.K.'s mother. About 8 a.m., Pincheon, J.K., and M.K. went to the motel in order to pack clothes. One month later, M.K. alleged that Pincheon had raped her at the motel. J.K. testified that M.K. and Pincheon were never alone, because, J.K. said, she never left the room during the time they were at the motel, and, thus, that no rape could have occurred.
On May 5, 1997, the circuit clerk issued a writ of arrest for Pincheon. The writ-of-arrest form was filled in so that it read as follows (the underlined portion was added by hand): "An indictment having been found against James Earl Pincheon at theDecember Term, 1996, of the Circuit Court of Marion County, for the offense of interference with custody. You are therefore commanded forthwith to arrest said James Earl Pincheon and commithim to jail, unless he give bail to answer such Indictment at the next term of our Circuit Court to be holden for next term next, and make return of this writ according to law." There is nomention in the writ of arrest of any charge save interference withcustody. An Alabama Uniform Arrest Report, dated the same date, lists charges of "Rape 2nd," "Rape 1st," and "Interference with custody." However, the report is not signed, nor is there any notation on it indicating that Pincheon saw this arrest report. The case action summary sheet contains an entry stating that on May 5, 1997, Pincheon appeared with counsel, Alphonso Beckles, "and waive[ed] the reading of the indictment and plead[ed] not guilty."
On September 22, 1997, the case came on to be tried. In the record is a copy of what purports to be an indictment, entitled "Grand Jury No. 50" and "December Term 1996." It charges that James Earl Pincheon: Count 1) "did knowingly take or entice J. K., a child under the age of 18 from the lawful custody of its parent, guardian, or other lawful custodian, in violation of Section13A-6-45";[1] Count 2) *Page 1221 
"did engage in sexual intercourse with [M. K.], a female, by forcible compulsion in violation of Section 13A-6-61"; Count 3) "did engage in sexual intercourse with [M. K.], a female, who was less than sixteen years of age and more than twelve years of age . . . in violation of § 13A-6-62." However, there is no evidence in the record to indicate that the indictment was signed by the foreman of the grand jury or was filed in the clerk's office.
The first matter considered by the trial court was Pincheon's motion to sever. The record contains this conversation:
 "THE COURT: The defense counsel has raised the question of severance, and I don't have the rules in front of me, but I think there's maybe a time limit on that, and so, that motion for a severance is denied.
 "MR. BECKLES. Judge, may I put the argument in that these cases occurred approximately two years apart from each other, that there were mistakes made in the previous indictments — previous indictment against the defendant, that the district attorney's office subsequently indicted the defendant, on the Code Section 13A-6-45 which was enticing a minor to leave the custody of her parents, subsequently, and the second, and Count Two and Count Three which deal with Section 13A-6-61, Code of Alabama, which is the rape of a minor under the age of sixteen years of age.
 "The State had a joint indictment. However, it did not move or file a motion with the Court to try these cases in a single case; therefore, I did not file a motion for severance earlier because there was nothing on the record to indicate to me that they were going to try these cases as a single case.
 "Based on the time frame it occurred and the nature of the case, I think it would be prejudicial to the defendant for the evidence in Count One and the evidence in Count Two and Count Three to be tried in a single matter.
 "My motion for severance is based on the fact that it is my understanding that the two cases will be tried as one, which there is no facts in Count One and in Counts Two and Three that would be similar in nature that would require the Court to try these matters as a single case, and we feel it would be prejudicial error if the two cases and the three counts are tried jointly."
Pincheon's attorney claimed that he had not filed a motion for severance at an earlier date because nothing on the record indicated that the prosecutor was going to consolidate the cases. The court denied Pincheon's motion to sever as untimely.
Rule 13.3(a), Ala.R.Crim.P., provides, in part:
 "(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
 "(2) Are based on the same conduct or are otherwise connected in their commission; or
 "(3) Are alleged to have been part of a common scheme or plan."
Rule 13.4(b), Ala.R.Crim.P., reads:
 "(b) Timeliness and Waiver. A defendant's motion to sever offenses or defendants must be made not more than seven (7) days after arraignment or filing of a written plea of not guilty prior to trial, or, in the event the court has ordered charges or defendants to be tried jointly, pursuant to Rule 13. 3, then within seven (7) days of the court's order, in any event, prior to trial. If, after the expiration of these time periods, a ground not previously known arises, or becomes known, either before or during trial, and that ground could not have been discovered previously through the exercise of due diligence, the defendant may move for severance of all counts, but must do so *Page 1222 
at the earliest opportunity. The right to move for severance is waived if a proper motion is not timely made."
The Court of Criminal Appeals, in its unpublished memorandum, noted that Pincheon appeared with counsel on May 5, 1997, waived a reading of the indictment, and entered a plea of not guilty. The Court of Criminal Appeals concluded that Pincheon should have known that the cases would be tried together, because on that same day he filed a consolidated appearance bond that shows each of these charges.
In Kennedy v. State, 640 So.2d 22 (Ala.Crim.App. 1993), the Court of Criminal Appeals confronted a case similar to this one. The defendant in that case was charged with interference with custody, in violation of § 13A-6-45, as to one person and was charged with second-degree rape, in violation of § 13A-6-62, as to another. The Court of Criminals Appeals reversed the defendant's convictions, on the grounds that he must be tried separately for these crimes against different victims. The court explained:
 "Rule 13.3(a) is `patterned after Rule 8(a) of the Federal Rules of Criminal Procedure.' H. Maddox, Alabama Rules of Criminal Procedure 405 (1990). In deciding consolidation claims under Rule 13.3, A.R.Crim.P., this Court has followed the case law interpreting Federal Rule 8. See, e.g., Hinton v. State, 548 So.2d 547, 554 (Ala.Cr.App. 1988), affirmed, Ex parte Hinton, 548 So.2d 562, 566 (Ala. 1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989); Langham v. State, 494 So.2d 910, 915 (Ala.Cr.App. 1986). One noted commentator on the federal rules has observed:
 "`It is the "same or similar character" aspect of Rule 8(a) which has provoked the greatest controversy and proved the most difficult to interpret. . . . The arguments against this form of joinder are stronger than those against the other forms of joinder under Rule 8(a). When the government joins offenses based on the same acts or trans-actions or connected acts or transactions, the prosecution is spared the burden of proving the same set of facts more than once. There is no comparable saving of trial time when offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence. Thus, when totally unrelated, similar offenses are joined, defendant faces a "considerable" risk of prejudice.'
 "8 Moore's Federal Practice ¶ 8.05[1] at 8-17 and ¶ 8.05[4] at 8-21 to 8-22 (2d ed. 1991) (footnotes omitted).
 "As we observed in Jenkins v. State, 472 So.2d 1128 (Ala.Cr.App. 1985):
 "`"Decisions applying the `same or similar character' test have generally failed `to provide criteria which would provide guidance as to the precise scope of this rule.' The view seems to be gaining acceptance, however, that the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense."'
 Jenkins, 472 So.2d at 1129 (quoting C. Wright, Federal Practice and Procedure: Criminal 2d § 143 (1982)).
". . . .
 "In the present case, we conclude that in a separate trial on counts I through IV of the indictment (the offenses alleged to have been committed against A.K.), evidence relating to counts VII and VIII (the offenses alleged to have been committed against C.F.) would not have been admissible. The offenses against the two victims were not `based on the same conduct or . . . otherwise connected in their commission.' The criminal acts alleged to have been perpetrated against the two victims took place at different times and under different circumstances. The appellant was not *Page 1223 
charged with interfering with the custody of C.F. and he was not charged with raping A.K. The only connection between the two victims appears to have been that A.K. and C.F. were cousins, that A.K. introduced C.F. to the appellant, and that when the appellant was arrested for interference with the custody of A.K., the ensuing search of his residence disclosed nude photographs of both A.K. and C.F. The photographs, however, were not taken at the same time, and there is no evidence that either girl knew that nude photographs had been taken of the other. At trial, the offenses against A.K. and C.F. were proved by `different bodies of evidence.' 8 Moore's Federal Practice ¶ 8.05[4] at 8-22.
". . . .
 "The `common scheme or plan' exception to the rule excluding collateral crimes evidence comes into play only when there is a real question as to the identity of the perpetrator. Ex parte Bowden, 538 So.2d 1226, 1234 (Ala. 1988). In Bowden, the Supreme Court reiterated that identity must be genuinely at issue before the `identity exception' can be invoked. 538 So.2d at 1234.
". . . .
 "The prejudice inherent in being forced to defend against the charges of the production of obscene matter involving both A.K. and C.F., when the appellant was additionally charged with the second degree rape of C.F., but not of A.K., is obvious. In Jenkins v. State, this Court found:
 "`The joinder of the three offenses [rape of a 13-year-old, rape of an adult married woman, and indecent exposure involving a 9-year-old] so prejudiced Jenkins as to deny him a fair trial. The inflammatory influence that the proof of each offense would almost inevitably exert on the others presents a situation too self-evident to be disregarded. . . . "Since prosecutions for sex crimes, particularly ones regarded as deviate, tend in any event to invoke prejudicial preconceptions among jurors, the joinder of the indictments created an impermissible risk. For the superficial closeness of the indictments here, resulting largely from a common focus on the same kind of aberrant sexual practices, was likely to eclipse the very fundamental difference between them." . . . "That commonly held behavioral prejudices about those who perpetrate sex crimes, mistakenly assuming that the commission of one type of sex crime predisposes to another kind, are often unfounded has been well documented."'
 Jenkins, 472 So.2d at 1129-30 (quoting People v. Shapiro, 50 N.Y.2d 747, 431 N.Y.S.2d 422, 426, 409 N.E.2d 897, 901 (1980)) (bracketed material added by court in Jenkins deleted)."
640 So.2d at 28-30.
Here, the charges against Pincheon are not of the same or of a similar character, they are not based on the same conduct, and they are not alleged to have been part of a common scheme or plan. In addition, the charges relate to two separate victims. The only connection is that the alleged victims are sisters. Consistent with the conclusion of the Court of Criminal Appeals in Kennedy, we conclude that there is an obvious prejudice to the defendant inherent in his being forced to defend against the charge of interference with the custody of J.K., when he was additionally charged with first and second-degree rape of M.K. We believe this prejudice is a "compelling prejudice" that requires a conclusion that the trial court abused its discretion in not granting a severance. Ex parte Hinton, 548 So.2d 562 (Ala.), cert. denied, 493 U.S. 969 (1989). We must, therefore, reverse the judgment of the Court of Criminal Appeals affirming Pincheon's convictions. That court's judgment is reversed and the cause is remanded.
REVERSED AND REMANDED. *Page 1224 
Hooper, C. J., and Maddox, Houston, Kennedy, Cook, See, Lyons, and Johnstone, JJ., concur.
Brown, J., recuses herself.
[1] The original charge under which Pincheon was indicted in DC-95-231, although also referred to as "interference with custody," was that Pincheon did "interfere, knowingly, with custody of minor child, J.K., in violation of § 12-15-15, Code of Alabama."