PER CURIAM.
In March 2004, Brian Scott Culver was indicted by a Jefferson County grand jury for one count of second-degree domestic violence, a violation of § 13A-6-131, Ala. Code 1975; one count of furnishing drugs to a minor, a violation of § 13A-12-215, Ala.Code 1975; and two counts of possession of obscene matter containing a visual reproduction of a person under the age of 17 years, violations of § 13A-12-192(b), Ala.Code 1975. The jury found Culver guilty of the two counts of possession of obscene matter, but acquitted him of domestic violence and furnishing drugs to a minor. The trial court sentenced Culver to 10 years’ imprisonment for each of his convictions, the sentences to run concurrently.
The evidence adduced at trial indicated the following. In November 2003, Culver was living at a residence in Hoover that he shared with his wife, S.B., her son, and her daughter, K.W.,[1] who was then 13 years old. Culver and S.B. had married in February 2003, and Culver was KW.’s stepfather. Sometime after midnight on November 11, 2003, Culver listened on an extension telephone to a conversation between K.W. and her boyfriend, and he learned that the couple had been sexually active. Culver informed S.B., and she also listened to some of the telephone conversation. Culver and S.B. then confronted K.W. Culver insisted that they speak to the boyfriend and his parents, and he drove to the boyfriend’s house at approximately 2:00 a.m. that morning; S.B. and *504 K.W. accompanied Culver. S.B. spoke to the boyfriend’s father, and they agreed that they would watch their children more closely and keep in contact with one another.
When S.B., K.W., and Culver returned to the residence, they went into the room next to K.W.’s bedroom that the family used as a playroom and as an office. S.B. talked to K.W. about her sexual activities while Culver typed on the computer. S.B. testified that Culver called K.W. a slut and a whore and that he was very angry and agitated. Culver got up from the computer and got a telephone book, looked through it for a telephone number, and then left the house. S.B. and K.W. looked at the computer after Culver left, and they saw that he had been conducting Internet searches for stun guns.
K.W. testified that later that day, sometime during the afternoon, she and Culver were at the residence alone, and she was asleep on the couch. According to K.W., Culver woke her up and gave her two blue pills. K.W. said that Culver told her that she needed to take them because she had a headache. K.W. said that she took one pill and threw the second one into the garbage can in the kitchen.
K.W. said that late that evening, near midnight, she was awakened in her bed by what felt like an electrical shock to her upper back. When she awoke, she discovered that Culver was in bed beside her, beneath the covers. According to K.W., he appeared to be shoving something underneath the pillow when she first saw him in her bed, but she did not see an object. K.W. said that Culver was wearing shorts and a tank top, and that he had a stethoscope around his neck; according to K.W., Culver rubbed her back and told her not to say anything. K.W. then got out of the bed and, when she did, she saw a bag that looked like a shaving kit on the floor beside her bed. K.W. said that she also noticed other items around her bed, and that she saw Culver pushing those items under her bed. K.W. left her bedroom, went to the kitchen to get a drink of water, and then went to the master bedroom where her mother was sleeping. K.W. told S.B. that Culver had shocked her, but when Culver came into the master bedroom, he denied doing anything to K.W. K.W. testified that she then stated to Culver, “ Tes, you did. I woke up, and you were beside me, and you hurt me.’ ” (R. 928.)
Culver and S.B. argued over the incident, and then S.B. and K.W. went to K.W.’s bedroom, where they found several items in a clear box under her bed, including “sex toys,” condoms, pornographic magazines, and a vaginal syringe. (R. 929.) K.W. said that her mother pushed the syringe and that Vaseline-brand petroleum jelly and a brown pill came out. According to K.W., she and her mother also found Vaseline on the headboard of KW.’s bed. K.W. testified that, although he initially denied any involvement, Culver eventually admitted that he had put all of those items in her bedroom. S.B. and Culver continued to argue, K.W. said, and Culver finally told S.B. that he was going to leave. Culver told S.B. that she could stay at the house with her children and that he would move into their house at Smith Lake.
At that point, Culver gathered a variety of items and put them into his vehicle. K.W. said that he put the clear box that had been beneath her bed into his vehicle but that she took it out and hid it in the bushes. After Culver left, S.B. telephoned the police, and several officers came to the residence. K.W. said that police officers searched the house, photographed her back where she had been shocked, and photographed her hands. When Culver returned to the residence before 6:00 a.m. *505 the following morning with clothing that belonged to S.B. and the children from the house at Smith Lake, the police arrested him on a charge of domestic violence.
During the search of the residence in the early morning hours of November 12, 2003, police officers found seven Polaroid photographs; five of the photographs depicted a female’s genitalia and two photographs depicted a male’s genitalia. The photographs were found inside two envelopes that had been placed between two books on a bookshelf in the playroom/office located next to KW.’s bedroom. The Polaroid photographs were later shown to K.W., and K.W. identified herself as the female in the photographs. K.W. stated that she recognized the razor burn on her shaved genital area and that she recognized her hands in the photographs, including her fingernail polish. K.W. also testified that she recognized the sheets depicted in some of the photographs as being sheets that had been used on the bed Culver and her mother shared at their lake house. K.W. testified that her mother had purchased the sheets for Christmas in 2002. The police also showed each of the Polaroid pictures to S.B., and S.B. identified K.W. and Culver in the photographs based on her knowledge of certain of their physical characteristics. S.B. also identified the sheets in the Polaroid pictures as the sheets she had purchased as a Christmas gift for Culver in 2002 and that they kept at the lake house. K.W. testified that she and Culver had stayed at the lake house without S.B., and that, on more than one of those occasions, she had gone to sleep on the couch in the lake house and she had awakened in the bed her mother and Culver shared, but she did not know how she got into the bed. K.W. remembered the sheets depicted in the photographs being on the bed on one of the occasions when this occurred.
In addition, when police officers first arrived at the residence, S.B. gave an officer what she described at trial as a vaginal syringe that she had found in KW.’s room. According to S.B., the syringe contained “ICY jelly or petroleum stuff’ and a pill. (R. 1369.) The pill S.B. alleged to have found inside the syringe was later determined to be a prescription sleep aid. Also recovered during the search of the residence were adult magazines and a Polaroid camera in a storage room in the attic that was accessed through K.W.’s bedroom. A Raptor-brand stun-gun box was recovered from the master bedroom closet. In the playroom/office next to KW.’s bedroom, police recovered a bottle of Aleve brand pain reliever that had several blue pills inside. The pills were later tested and determined to be prescription medication, Xanax and Valium. A pill later determined to be Xanax was recovered in the garbage can in the kitchen. K.W. underwent an examination to assist in determining whether she had been sexually assaulted, and samples of her blood and urine were taken. The physical examination revealed no signs of sexual abuse, but test results revealed the presence of the prescription medication Valium in K.W.’s blood.
The police told S.B. to note anything unusual she found in the house and to inform them of anything she found. On November 13, 2003, S.B. turned over to the police an 8mm video camera and a Polaroid camera that she found at the residence. The police conducted a second search of the residence on November 14, 2003, and an 8mm-format videotape was found in a storage room that was accessed through the walk-in closet in the master bedroom. The police officer who found the videotape testified that it had not been in plain view when he entered the storage room, but that he had found the videotape in a corner.
*506 The videotape was played for the jury, and we have reviewed the tape. The first portion of the videotape depicted a female on her back with her legs parted. Only the genitals, which appear to have been shaved, and the uppermost portion of the inner thighs were visible in most of the videotape; a portion of the buttocks and a portion of the lower abdomen were visible in some parts of the videotape, as the camera was repositioned and those portions of the body were filmed. The female’s hands were resting motionless above her pubic area, with the fingers slightly curled. Specks of what appear to be fingernail polish were visible. The female was lying on a blue sheet or blanket that had a white imprint. The body appeared to have been covered above the abdominal area. A male’s hands are also depicted in the videotape; subject to certain objections he made at trial, Culver stipulated that he was the man depicted in the videotape.
In the first portion of the videotape, Culver first rubbed the female’s lubricated vaginal area, and then he digitally penetrated the female’s vagina for several minutes. Culver then inserted what appeared to be a plastic vaginal syringe into the female’s vagina, and moved the syringe in and out of the female’s vagina for several minutes. More digital penetration followed, and at the end of this portion of the videotape, Culver placed a large white, ridged object at the entrance of the female’s vagina. Culver repositioned the camera during the filming of this portion of the videotape and he placed his right thumb in front of the lens as he did so. Ridge detail on the thumb was visible. The female was motionless during the videotaping, and she appeared to be unconscious. K.W. viewed a still photograph depicting the female in this portion of the videotape, and she identified herself in the photograph. She recognized her hands and a red spot on one of her fingers. K.W. said she also recognized the sheets in the photograph as those that had been on her mother and Culver’s bed at the lake house.
Immediately following this portion of the videotape, a second, shorter, portion of the videotape depicted a nude female body filmed from the back, so that only the female’s buttocks and upper thighs were visible. The videotape depicted Culver inserting his fingers into the female’s anus and vagina. The female was motionless in this portion of the videotape. K.W. viewed still photographs of the nude female depicted in the second part of the videotape, but she could not identify herself as the female in those photographs.
A freeze-frame photograph of the right thumb that was placed over the lens during the videotape was made, and the image was matched to Culver’s thumbprint. Fingerprints were also lifted from the back of one of the Polaroid pictures and from the outside of the 8mm videotape. Subject to objections made at trial, Culver stipulated that all the prints were his.
The parties stipulated that during a search of the lake house, the police recovered a set of blue sheets with a white printed pattern on them. K.W. and S.B. testified that the pattern on those sheets matched the pattern on the sheets in the Polaroid photographs of the female and the sheets in the 8mm videotape.
Photographs of K.W.’s hands were taken on November 13, 2003. Photographs of K.W.’s genitalia, buttocks, and upper thighs, and of S.B.’s genitalia, buttocks, and upper thighs were taken. Photographs of S.B.’s hands were also taken. All of the photographs were admitted into evidence, and the jury was able to compare those photographs with the Polaroid photographs and the 8mm videotape and the *507 still photographs made from that videotape.
I.
Culver contends that the trial court erred when it joined for trial the four charges against him. He argues that the charges of possession of obscene matter[2] should not have been consolidated with the charges of domestic violence and distribution of drugs to a minor because, he says, the offenses were not of the same or similar character and because, he says, evidence of one offense would not have been admissible at the trial of the other offenses. He further alleges that “the join-der for trial of ‘sex crimes’ with ‘non-sex crimes’ in Mr. Culver’s case produced ... ineradicable prejudice .” (Culver’s brief at p. 24.)
We note, first, that the trial court consolidated the four charges for trial before the State filed a motion to consolidate the charges, but after Culver had presented his argument to the trial court that the cases should not be consolidated. Culver argued that consolidation was not permitted under Rule 13.3, Ala.R.Crim.P., because, according to Culver, there was no common scheme or design. He further argued that he would be unfairly prejudiced if any of the cases, other than the two possession-of-obscene-matter cases, were tried together. The trial court determined that evidence from each case would likely be introduced in all the trials, and it consolidated the four cases sua sponte. (C. 102.)
A trial court is vested with substantial discretion in deciding whether to consolidate cases, and its decision as to consolidation will be reversed only for a clear abuse of that discretion. See Snell v. State, 677 So.2d 786, 789 (Ala.Crim.App.1995). An appellant who argues that the trial court abused its discretion when it refused to grant a severance must prove “compelling prejudice” before he is entitled to relief. Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989).
Rule 13.3, Ala. R.Crim. P., provides, in relevant part:
“(c) Consolidation. If offenses or defendants are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint.”
Rule 13.3(a), Ala. R.Crim. P., provides, in relevant part:
“(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
“(1) Are of the same or similar character; or
“(2) Are based on the same conduct or are otherwise connected in their commission; or
“(3) Are alleged to have been part of a common scheme or plan.”
In Lewis v. State, 889 So.2d 623 (Ala.Crim.App.2003), this Court discussed the legal principles relevant to consolidation when Lewis argued on appeal that the trial *508 court had erred when it consolidated capital and noncapital indictments for trial. This Court stated:
“In Yelder v. State, 630 So.2d 92 (Ala.Crim.App.1991), rev’d on other grounds, 630 So.2d 107 (Ala.1993), this Court stated:
“ ‘ “Joinder, and thus consolidation, is appropriate where the crimes are of similar character, meaning nearly corresponding, resembling in many respects, or having a general likeness. United States v. Werner, 620 F.2d 922, 926 (2d Cir.1980).” Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989). The question is whether the offenses are of a same or similar character so that a person evaluating the crimes would believe that the offenses were committed by the same person. See King v. State, 518 So.2d 880 (Ala.Cr.App.1987). Perhaps the most important consideration is the answer to the following question: If the offense[s] were tried separately, would evidence of each offense be admissible in the trial for the other offense? See Nickerson v. State, 523 So.2d 504 (Ala.Cr.App.1987); King, supra.’
“630 So.2d at 96. Moreover,
“ ‘[T]he “common scheme or plan” provision of Rule 13.3 is limited by the “common scheme or plan” exception to the rule excluding collateral crimes evidence. That is, multiple offenses alleged to have been committed by the same defendant may not be consolidated and tried jointly under the “common scheme or plan” provision of Rule 13.3 unless evidence of each offense would be admissible, under the “common scheme or plan” exception to the collateral crimes exclusionary rule, at a separate trial of the other offense. See King v. State, 518 So.2d [880,] 884 & n. 2 [ (Ala.Crim.App.1987) ]; Ex parte Hinton, 548 So.2d [562,] 566 [ (Ala.1989) ].’
“Kennedy v. State, 640 So.2d 22, 29 (Ala.Crim.App.1993). Thus, consolidation in this case was proper only if evidence of each offense would be admissible at a separate trial of each of the other offenses.
“ ‘On the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith. This is a general exclusionary rule which prevents the introduction of pri- or acts or crimes for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime or act was committed before or after the one for which the defendant is presently being tried....
[[Image here]]
“ ‘The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant’s bad character and conformity therewith on the occasion of the now-charged crime. If the defendant’s commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.’
“C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996) (footnotes omitted). The other purposes for which collateral-crimes evidence may be admissible, i.e., the exceptions to the exclusionary rule, include:
“ ‘ “(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transac *509 tion; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.” ’
“Nicks v. State, 521 So.2d 1018, 1026 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 (Ala.1988), quoting Nelson v. State, 511 So.2d 225, 233 (Ala.Crim.App.1986), affd, 511 So.2d 248 (Ala.1987). These exceptions do not apply unless ‘there is a real and open issue as to one or more of those “other purposes.”’ Bowden v. State, 538 So.2d 1226, 1227 (Ala.1988). Furthermore, the common plan, scheme, or design exception is ‘essentially coextensive with the identity exception,’ Ex parte Darby, 516 So.2d 786, 789 (Ala.1987), and ‘applies only when identity is actually at issue.’ Campbell v. State, 718 So.2d 123, 128-29 (Ala.Crim.App.1997).”
889 So.2d at 660-61.
In Summerlin v. State, 594 So.2d 235 (Ala.Crim.App.1991), this Court held that no error had occurred when the trial court refused to sever arson charges from assault and sexual-abuse charges. Summerlin had threatened to harm his former roommate, J.E., a woman who was at that time living with another man, James Fillmon, and he had threatened to kill Fillmon. A few days later, Summerlin cut J.E. and touched her vaginal area. A few evenings later, the mobile home Fillmon and J.E. were sleeping in was burned, and the fire was determined to have been caused by an accelerant. This Court determined that the offenses were properly tried together because they were connected and that Summerlin had failed to show that he suffered any specific or compelling prejudice as a result of the joinder. This Court also noted that Summerlin was acquitted of the arson charge and that the jury could easily separate the evidence of separate crimes.
In Snell v. State, 677 So.2d 786 (Ala.Crim.App.1995), Snell was charged with enticing a child to enter a house for immoral purposes and with two counts of sodomy. Snell allegedly enticed a minor child to come into his house using pornographic movies and attempted to convince the minor child to allow him to have oral sex with her. The minor child testified that Snell performed oral sex on her twice. Snell argued on appeal that the trial court had erred when it denied his motion to sever the enticement charge from the sodomy charges. This Court in Snell discussed the facts and the severance issue decided in Summerlin, supra, and held that “the enticement charge was even more closely connected with the sodomy charges than the arson charge was connected to the sexual abuse and assault charges in Summerlin.” Snell, 677 So.2d at 789. The Court also stated that no prejudice results from consolidation when the jury can easily separate the evidence of the separate crimes. See id. “Clearly,” the Court said, “the jury separated the evidence of the separate crimes, as evidenced by the fact that it convicted Snell of the offense of sodomy, but not the offense of enticement.” 677 So.2d at 789-90. The Court held that the trial court had not abused its discretion when it refused to sever the enticement charge from the sodomy charges.
Here, the evidence indicated that during the afternoon before K.W. awoke to find Culver in bed with her, Culver gave K.W. two blue pills, one of which she ingested. The prescription drug Valium was later found in K.W.’s blood. K.W. testified that Culver shocked her with something later that night, after he had gotten into bed *510 with her while she was asleep. Culver was wearing a stethoscope, and sexual devices and pornographic magazines were found underneath KW.’s bed. The 8mm videotape recovered in a search of the house the following day depicted an apparently unconscious K.W. being sexually assaulted by Culver on a bed with blue and white sheets, and the Polaroid photographs discovered on the night Culver was arrested appeared to depict K.W. in a position similar to the position on the videotape and on a bed made up with the same sheets. K.W. testified that she recalled waking up at the lake house in the master bedroom on the blue and white sheets, even though she had fallen asleep on the couch. Based on this evidence, the State’s theory was that Culver had previously given drugs to K.W. to render her unconscious so that he could sexually assault her and so that he could videotape and photograph her genitalia as he did so, and that when Culver gave K.W. drugs and later got into bed with her on November 12, 2003, he intended to incapacitate her and abuse her further.
The charged crimes were clearly connected in their commission and were part of a common plan or scheme, and the evidence in the cases overlapped. In addition, evidence of each crime would have been admissible at separate trials as part of the res gestae and to establish motive. Based on our review of the relevant legal principles and on the circumstances surrounding the charges, we hold that the trial court did not abuse its discretion when it consolidated the cases for trial.
We note that Culver argues that the “common plan or scheme” rationale did not support the consolidation of the cases for trial because, he says, his identity was never genuinely at issue. However, the record reveals otherwise. During a pretrial hearing on the propriety of consolidation of the four charges, Culver argued that there was no question of identity so far as the State was concerned, because the State had always alleged that Culver was the perpetrator. When the trial court asked Culver if he was agreeing with that, however, Culver stated, “No, ma’am, I am not. I’m not agreeing to it at all. But that is their position.” (R. 66.) During the trial, Culver argued to the trial court that it should not allow testimony that his thumbprint had been identified as the print filmed on the videotape, stating: “At this time, the defendant is not saying whether that is or is not him on that videotape.” (R. 1607.) Thus, Culver placed his identity at issue before and during trial. Furthermore, as discussed above, the cases were properly consolidated for reasons other than that they were part of a common plan or scheme. Specifically, as the prosecutor argued during a pretrial hearing, evidence of each crime would have been admissible in the trials of the other crimes as evidence of motive and as part of the res gestae. (R. 88-89.)
Finally, we note that the jury found Culver not guilty of the offenses of domestic violence and furnishing drugs to a minor. He was convicted only of possessing obscene matter depicting a child under the age of 17 years. Thus, Culver’s argument that he was prejudiced by the joinder of “sex crimes” with “non-sex crimes” is clearly refuted by the record. The jury was most certainly able to separate the evidence of the four crimes because it convicted Culver only of the crimes involving possession of obscene matter. Culver has failed to establish that he suffered specific and compelling prejudice as a result of the consolidation of the cases for trial. Therefore, Culver is not entitled to any relief on this claim of error.
*511 II.
Culver also contends that the trial court erred when it refused to consolidate the two possession-of-obscene-matter charges into a single charge or to dismiss one of the charges because, he says, he should not have been charged separately for possession of the 8mm videotape and for possession of the Polaroid photographs. Because he was convicted twice for a single offense, Culver argues, the prohibition against double jeopardy was violated and one of the convictions and sentences must be set aside. Culver raised this issue in pretrial motions, and the parties presented extensive arguments on the issue. The trial court denied Culver’s motions to consolidate the possession charges into one charge or to dismiss one of the possession charges, and it submitted both charges to the jury. The court determined that because the charges were based on different media — a videotape and a series of photographs — two charges of possession were proper. The jury found Culver guilty of both charges, and the trial court imposed sentences on both convictions.
Culver argues on appeal, as he did in the court below, that Girard v. State, 883 So.2d 714 (Ala.Crim.App.2002), aff'd, 883 So.2d 717 (Ala.2003), limited the State to charging him with only one count of possession of obscene matter because the “unit of prosecution” as defined in Girard was the simultaneous possession of a collection of obscene material, even though the collection contained multiple pieces of obscene matter. The State argues that Culver is not entitled to relief based on this Court’s holding in Girard, because, it says, the police found the 8mm videotape and the Polaroid photographs on different days and in different locations inside Cul-ver’s residence and that, therefore, each charge was based on a separate act of possession.
Section 13A-12-192(b), Ala.Code 1975, the statute under which Culver was indicted, provides that “[a]ny person who knowingly possesses any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony.” At the time of Culver’s actions, § 13A-12-190(12), Ala.Code 1975, defined “matter” as “[a]ny book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture or electrical or electronic reproduction, or any other articles or materials that either are or contain a photographic or other visual reproduction of a live act, performance, or event.”[3]
In Girard, supra, Girard was charged with 26 counts of possession of obscene matter under § 13A-12-192(b), Ala.Code 1975, because “numerous downloaded images and videos of underage boys” were discovered on the hard drive of his computer and on a computer disk. 883 So.2d at 714-15. Some of the files contained multiple images, and the possession of each file was charged as a separate crime. Girard argued in the trial court that he should have been charged with only one count of possession of obscene material, *512 and that the remaining counts were duplicitous. The trial court granted Girard’s motion for a judgment of acquittal as to several counts, and he was convicted for 10 counts of possession. On appeal, after noting the well-established principle that a single crime cannot be prosecuted as multiple offenses, this Court stated that, to determine whether double-jeopardy principles were violated when Girard was convicted of and sentenced for multiple counts of possession, the correct unit of prosecution had to be defined. 883 So.2d at 715-16. This Court then noted that it had addressed Girard’s argument regarding multiple prosecutions previously, though only in dicta:
“In Harris v. State, 563 So.2d 9 (Ala.Crim.App.1989), the defendant was indicted for four counts of possession of obscene material, violations of § 13A-12-192(b), Ala.Code 1975. Harris filed a ‘ “motion to dismiss the indictment as being multiplicitous, or in the alternative, motion to compel an election by the State as to the count it intends to prosecute.” ’ 563 So.2d at 9. The trial court denied the motion, and Harris subsequently pleaded guilty and received concurrent sentences of five years in prison. The Court of Criminal Appeals held that Harris had waived this argument by pleading guilty subsequent to the denial of his motion, but continued:
“ ‘Harris was charged in a four-count indictment with four separate violations of § 13A-12-192(b). Count one alleged the possession of a pornographic magazine. Counts two, three, and four each involved the possession of a different video cassette tape. Hams contends that he should have been convicted and sentenced for only one offense, because the magazine and cassette tapes were seized from his residence on the same occasion. We recognize that this argument may have considerable merit. See United States v. Meyer, 602 F.Supp. 1480, 1480-81 (S.D.Cal.1985) (the appropriate unit of prosecution for offenses of transportation of material involving sexual exploitation of children and importation of obscene material, arising from defendant’s transporting several photographs in one binder, was one count for each offense, rather than one count for each photograph for each offense); Braunstein v. Frawley, 64 A.D.2d 772, 407 N.Y.S.2d 250, 253 (1978) (“[t]he promotion or possession of more than one item at the same time and on the same date constitutes one crime, and cannot be split into as many crimes as there are items”); State v. Smith, 323 N.C. 439, 373 S.E.2d 435, 438 (1988) (“[o]ther courts have similarly held that a single transaction involving obscene materials constitutes but one offense”). See also United States v. Kinsley, 518 F.2d 665 (8th Cir.1975) (possession of firearms); Vogel v. State, 426 So.2d 863, 878-82 (Ala.Cr.App.1980), affirmed, 426 So.2d 882 (Ala.1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983) (possession of drugs); Owens, Alabama’s Minority Status: A Single Criminal Act Injuring Multiple Persons Constitutes Only a Single Offense, 16 Cum. L.Rev. 85, 105-06 (1985) (discussed in McKinney v. State, 511 So.2d 220 (Ala.1987)). However, this issue has not been preserved for review.’
“563 So.2d at 10.”
883 So.2d at 716-17 (emphasis added).
This Court held in Girard that the unit of prosecution was “the simultaneous possession of a collection of obscene material,” and that Girard was guilty of only one count of possession. Girard, 883 So.2d at 717. The Court reversed the trial court’s *513 judgment and remanded the cause for the trial court to vacate all but one of Girard’s convictions and sentences. The Court explained:
“The act rendered illegal by the statute — the possession of any obscene matter, even if the possession is of multiple pieces of obscene matter — is simultaneous and inseparable, more like the simultaneous, single act of transportation or importation of multiple pieces of obscene matter, see United States v. Meyer, 602 F.Supp. 1480 (S.D.Cal.1985), than the separate transactions involved in the distribution of multiple pieces of obscene matter, see King v. State, 674 So.2d 1381 (Ala.Crim.App.1995).”
Girard, 883 So.2d at 717 (footnote omitted).
The Alabama Supreme Court affirmed this Court’s judgment and, in doing so, quoted extensively from this Court’s opinion. See Girard v. State, 883 So.2d 717 (Ala.2003). The State had argued in its petition for the writ of certiorari that the Alabama Legislature had clearly indicated in the statute prohibiting the possession of child pornography that the unit of prosecution was each obscene image, regardless of the medium in which the image was stored. However, the Alabama Supreme Court rejected the State’s argument:
“The State cites King v. State, 674 So.2d 1381 (Ala.Crim.App.1995), in support of its argument. In King, the Court of Criminal Appeals held that § 13A-12-200.2(1), Ala.Code 1975, part of the Alabama Anti-Obscenity Enforcement Act, authorizes the prosecution of each distributed item that qualifies as obscene material pursuant to the statute. The court explained that ‘[e]very item listed’ in the statute’s definition of ‘material’ ‘is singular’ and that ‘[i]f the legislature intended for violations based on transactions instead of individual items distributed, it could have indicated that each item ... could also be plural.’ 674 So.2d at 1383. The State argues in its brief that ‘[t]he court based its holding on its interpretation of the term “material” in Ala.Code [1975,] § 13A-12-200.1(2),[2] which is analogous to the term “matter” in the child pornography statute in Ala.Code [1975,] § 13A-12-190(12).’ Section 13A-12-190(12) defines ‘matter’ as:
“ ‘Any book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture or electrical or electronic reproduction, or any other articles or materials that either are or contain a photographic or other visual reproduction of a live act, performance, or event.’
“As opposed to the definition of material found at § 13A-12-200.1(15), Ala. Code 1975,[3] and discussed in King, supra, the definition of matter at § 13A-12-190(12), Ala.Code 1975, does include the plural of some terms. Also the statute at issue in this petition, § 13A-12-192, criminalizes the possession of obscene matter, while the statute at issue in King, § 13A-12-200.2, criminalized the distribution of obscene material.
[[Image here]]
*514 The Alabama Supreme Court also noted that “other statutes that address the crime of possession criminalize the act of possession, regardless of how many items the offender actually possessed.” 883 So.2d at 722. By way of example, the Court quoted § 13A-7-8, Ala.Code 1975 (possession of burglar’s tools), § 13A-7-44, Ala.Code 1975 (criminal possession of explosives), and § 13A-7-28, Ala.Code 1975 (criminal possession of noxious substances). The Court noted that the foregoing statutes and § 13A-12-192(b), Ala.Code 1975, were similar in that they criminalized possession of “any” of the items mentioned in the statute. The Court then noted:
“[I]n McKinney v. State, 511 So.2d 220, 224 (Ala.1987), this Court explained that ‘legislative intent to allow multiple prosecutions for a single act that injures more than one person is determined by the “description of the unit of prosecution within the substantive criminal law statutes.” ’ (Quoting R. Owens, Alabama’s Minority Status: A Single Criminal Act Injuring Multiple Persons Constitutes Only a Single Offense, 16 Cum.L.Rev. 85, 104 (1985-86).) This Court then quoted the following from Owens:
“' “How, then, should the unit of prosecution be described so that an intent to allow multiple convictions is clear and unequivocal? Instead of using the word ‘any’ to describe the unit of prosecution, the singular words ‘a’ or ‘another’ should be used. An examination, then, should be made of the Alabama Criminal Code to see how the unit of prosecution is described. This examination will disclose whether the code allows multiple convictions.
“ ‘ “A review of the criminal code discloses that there are basically four categories into which the statutes can be divided.... The second category contains statutes in which the unit of prosecution is described with the word ‘any’; based on the above mode of statutory construction, only one conviction should be allowed.” ’
“511 So.2d at 224-25 (quoting Owens, 16 Cum. L.Rev. at 105-06).”
883 So.2d at 723. The Court then concluded that the unit of prosecution in § 13A-12-192(b), Ala.Code 1975, the statute under which Culver was also convicted, was the single act of possession, “regardless of how many items [were] actually possessed.” 883 So.2d at 723.[4]
Based on the foregoing, we must conclude that Culver’s argument is well-taken. Despite the fact that Culver was found to be in possession of a series of photographs and in possession of a videotape, the trial court erred when it determined that the possession of these items permitted two separate charges and convictions for possession of obscene matter based solely on the fact that the obscene matter was on different media. The State’s assertion that Culver was properly charged with two counts of possession because the videotape and the photographs were found on different days is also not persuasive. The evidence shows that Culver’s possession of the obscene items was simultaneous, even though the police did not find the videotape until they conducted the second search of the residence, a few days after the initial search when they found the *515 photographs. Culver remained in custody after he was arrested outside the residence shortly after the initial search, and he had no access to the residence before the videotape was found. That the police did not locate the videotape during the initial search did not somehow create a second crime of possession of obscene matter based on the subsequent discovery of the videotape. Under current Alabama law, Culver committed only a single criminal act when he possessed both forms of obscene material. Therefore, we have no choice but to reverse the trial court’s judgment and remand the cause for the trial court to vacate one of the convictions and corresponding sentence against Culver.
III.
Culver also contends that the trial court erred when it refused either to order the State to disclose KW.’s medical records to him or to examine the records in camera to “uncover evidence that [K.W.], despite alleging she was subjected to sexual acts by Mr. Culver involving large amounts of lubrication, never complained of any problems of residual wetness with her ‘private areas.’ ” (Culver’s brief at p. 29.) The State argues that any evidence in K.W.’s medical records has no relevance to Culver’s convictions for possession of obscene matter and that because Culver was acquitted of the remaining charges, the trial court’s ruling on this issue is not subject to appellate review.
The record reflects that Culver filed a pretrial motion seeking medical records for K.W. from all physicians who had examined her “for any medical condition in the last three years .... ” (C. 126-27.) During a hearing on that motion, Culver argued that the State had alleged that he had given K.W. drugs or had inserted them into her vagina by using a lubricant, and that the medical records “should show any suggestion of any intrusions anatomically” and whether she had experienced any problems when she woke up in the mornings. The trial court denied the motion. (C. 102.) Culver’s request for medical records was clearly related to the charges of furnishing drugs to a minor, and he was acquitted of that charge. “ ‘ “The charge upon which the conviction rests is the only charge that is subject to appellate review.” ’ ” Flowers v. State, 922 So.2d 938, 957 (Ala.Crim.App.2005), quoting Allen v. State, 683 So.2d 38 (Ala.Crim.App.1996), quoting in turn, McCain v. State, 611 So.2d 1123, 1124 (Ala.Crim.App.1992). Thus, the trial court’s ruling on this issue is not subject to appellate review.
We note, moreover, that during cross-examination, Culver asked K.W. if she had ever claimed that she had awakened in the master bedroom in the lake house “all full of Vaseline,” and K.W. testified that she had never said that. (R. 1054.) Even without the medical records, Culver was able to place before the jury the evidence that he sought from the medical records. Therefore, Culver is not entitled to review of, or relief on, this claim of error.
IV.
Culver contends that the trial court erred when it refused to order physical examinations and additional photographs of K.W. and S.B. so that he could obtain additional photographs of their buttocks and upper thighs so that he could attempt to prove that it was the back of S.B.’s body that was depicted in the second portion of the 8mm videotape. Culver alleges that he demonstrated to the trial court the extreme necessity required to warrant the additional physical examination and photographs of K.W. and of her mother. Culver raised this issue in the trial court, and the parties argued the issue extensively. The *516 court denied Culver’s request for additional photographs, finding that the photographs of K.W. and her mother that had already been taken were adequate to show the buttocks and upper thigh areas of the women for comparison purposes.
Culver’s argument about the necessity for additional examinations and photographs is premised on his argument that the woman depicted in the second portion of the 8mm videotape, the woman whose back was to the camera as she was penetrated vaginally and anally, was S.B., and not K.W. Culver argued throughout the proceedings in the trial court, and he continues to argue on appeal, that the first woman depicted in the videotape and woman depicted in the Polaroid photographs were the same person. The State presented evidence indicating that K.W. was depicted in the videotape and the photographs and that Culver was in possession of those materials. Culver’s assertion that the videotape depicted two women and not one, and that the woman in the second portion of the videotape was S.B., is irrelevant to his possession convictions. That S.B. or some other woman was depicted in the second portion of the videotape, even if true, would not have been exculpatory evidence. Therefore, Culver failed to establish any necessity, and certainly no extreme necessity, for additional physical examinations and photographs.
Lanton v. State, 456 So.2d 873 (Ala.Crim.App.1984), on which Culver relies, stands for the proposition that a trial court in a sex-crime case has the discretion to order a physical examination of the prose-cutrix when the defendant establishes extreme necessity for the examination, and that the trial court’s ruling on the matter will not be reversed unless the ruling constitutes an abuse of that discretion. We find no abuse of the trial court’s discretion here. The record establishes that the court carefully reviewed the photographs of K.W. and S.B. that had already been taken, considered Culver’s arguments in favor of the additional examination and photographs, and determined that the photographs that had already been taken adequately displayed the areas of the women’s bodies for comparison purposes. We find no abuse of the trial court’s discretion.
Finally, we note that in her testimony at trial, K.W. testified that she could not identify herself in the still photograph of buttocks that were taken from the second portion of the videotape. Thus, to the extent Culver believed it was relevant to his defense to establish that the videotape depicted two women, K.W.’s testimony permitted the jury to make that inference.
For the foregoing reasons, we hold that the trial court did not abuse its discretion when it denied Culver’s request for physical examinations and additional photographs of S.B. and K.W.
V.
Culver next contends that the tidal court erred when it refused to disclose to him the identity of any individuals, other than KW.’s stepbrother, about whom Cul-ver was aware, against whom K.W. had made allegations of sexual improprieties. He argues that the trial court should have disclosed the names of any other individuals K.W. had accused of improper sexual activity so that he could investigate whether K.W. had engaged in a common plan or scheme to falsely accuse people of sexual misconduct.
Culver’s request for the names of any other individuals K.W. had allegedly accused of sexual improprieties was related to the charges of domestic violence and distributing drugs to a minor, and whether K.W. had accused other people of coming into her room, drugging her, and assaulting her, as it had been alleged Culver had *517 done. Thus, as the State correctly argues, this issue is not related to the charges for which Culver was convicted, and it is not subject to appellate review. See Flowers v. State, 922 So.2d 938, 957 (Ala.Crim.App.2005).
VI.
Culver contends that the trial court erred when it admitted into evidence photographs of adult magazines and videotapes that were recovered during the initial search of Culver’s residence because, he argues, the evidence was irrelevant and prejudicial. Specifically, Culver argues that the jury might have been confused or misled into believing that the adult materials indicated that he had deviant sexual appetites, which, he claims, would have prejudiced his defense against the charges that he was in possession of obscene materials depicting a person under the age of 17 years. He also objects to the “staging” of the scene that resulted when the adult magazines were photographed on KW.’s bed, even though they had not been found on her bed. (Culver’s brief at p. 37.)
Culver does not list in his brief to this Court the exhibit numbers for the photographs he now argues were erroneously admitted. Rather, he merely cites to several pages of the record where the adult materials were discussed during the testimony of various witnesses. We have examined those portions of the record, and we have determined that Culver failed to object to the testimony that adult magazines were found in the attic and placed on K.W.’s bed for the photographs (R. 932, 1173-74) and that he failed to object to the testimony about the recovery of a canvas bag that contained adult material. (R. 1184-85). Furthermore, the photographic exhibits about which the witnesses testified, and that we understand to be those to which Culver now objects, were admitted into evidence without objection at trial. (R. 1135, 1185.) By failing to object to the photographs when they were offered and admitted, Culver has waived appellate review of this argument. See, e.g., Shouldis v. State, 953 So.2d 1275, 1284 (Ala.Crim.App.2006) (holding that to preserve an alleged error in the admission of evidence, “a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated, and a ruling on the objection must be made by the trial court”).
Moreover, we note that, during his closing argument to the jury, defense counsel argued, “S.B. and Brian Culver are some perverted people. They have got some fetishes and some wild ideas about how to do things.” (R. 2453.) Thus, Culver’s argument that the admission of photographs depicting adult magazines and videos might have prejudiced him by misleading the jury into believing that he had deviant sexual appetites is inconsistent with defense counsel’s argument at trial that he did, in fact, have such deviant sexual interests.
Therefore, Culver is not entitled to review of, or relief on, this claim of error.
VIL
Culver contends that the trial court erred when it admitted into evidence the 8mm videotape because, he argues, the State failed to authenticate the videotape and to prove that it was the same videotape as the one seized from Culver’s residence. Specifically, Culver argues that the videotape admitted at trial was not the original videotape taken from the residence, because that tape did not have any traces of black magnetic fingerprint powder even though the State had processed the original videotape for fingerprints, and because the tape admitted at trial had a sticker labeled “copy” on it. Thus, Culver *518 says, the videotape had been mishandled and the State failed to prove a proper chain of custody.
This argument was not preserved for review. Although Culver raised this issue in the trial court and the parties presented testimony on the issue at a hearing, at the conclusion of that hearing, Culver’s counsel stated:
“Judge, I’ve been doing this long enough to know what motion hearings are and what I have heard in the way of evidence. Let me say this: I realize that we currently have a difference of opinion about some of these fingerprint exhibits and about whether evidence was spoliated and things of that nature. And I would anticipate that the Court would, at this point, have no choice but to deny my motion as to those things. And the Court would have to say you believe it is a jury question, a right for cross-examination, but not something that is going lead for you [sic] to exclude this evidence. Having heard that evidence, I am smart enough to know that, and I don’t want to waste the Court’s time.”
(R. 539-40.) Thus, Culver abandoned his initial objections to the admissibility of the videotape. Moreover, when the videotape was offered into evidence during the trial, Culver did not object, and the videotape was admitted into evidence. (R. 1760.)[5] Thus, Culver has failed to preserve for this Court’s review any arguments about the admissibility of the videotape. See, e.g., Shouldis v. State, 953 So.2d 1275, 1284 (Ala.Crim.App.2006).
VIII.
Culver next contends that the trial court erred when it denied his motion for a mistrial on the ground that a witness for the State violated the trial court’s in limine order when he testified about numerous drugs that were collected from the Culver residence and submitted for forensic testing, and when he mentioned the “Cullman County investigation.” (Culver’s brief at p. 41.) Culver argues that the trial court’s curative instruction was insufficient to eradicate the prejudice that resulted from the witness’s testimony.
“The grant or denial of a mistrial is a matter within the sound discretion of the trial court, and its ruling will be disturbed only if an abuse of that discretion is shown.” J.E. v. State, 997 So.2d 335, 341 (Ala.Crim.App.2007). To be timely, a motion for a mistrial must be made immediately after the grounds alleged to warrant the mistrial become apparent. E.g., Garner v. State, 977 So.2d 533 (Ala.Crim.App.2007); Cooper v. State, 912 So.2d 1150, 1159 (Ala.Crim.App.2005).
During redirect examination of Detective Darren McGairty, the lead investigator in the case, the State asked Det. McGairty what items he had submitted to the Department of Forensic Sciences (“DFS”). Det. McGairty listed 42 items he had submitted to DFS, including various drugs, and that testimony comprises more than 2 pages of the record. (R. 1919-21.) *519 After Det. McGairty completed his answer, the State asked another question, which Det. McGairty also answered. Only then did Culver state, ‘Tour Honor, just for the record, we would like to make a motion later that would be timely.” (R. 1920-21.) The trial court replied, “All right.” (R. 1921.) The State continued its redirect examination of Det. McGairty. The State asked Det. McGairty if he was the only person who had submitted items to DFS for testing, and Det. McGairty testified that he was not the only person. The State noted that defense counsel in his cross-examination had asked Det. McGairty about “some massagers and items that I believe you testified were found in Cull-man County,” and asked Det. McGairty if he took those items to DFS. (R. 1921.) Det. McGairty replied, “No, I did not. Their investigators would have done that.” (R. 1921.) Culver did not object to the State’s question, and he did not request that the court strike Det. McGairty’s answer. The State then asked Det. McGairty if he was aware of whether any syringes had been submitted to DFS, other than the one S.B. had given to the police on the night of the incident. Culver then asked to approach the bench.
Outside the presence of the jury, Culver first stated that he had requested during the State’s questioning of Det. McGairty to make an objection later and to have it be considered timely, and he argued that the State had violated the court’s in limine order by eliciting testimony about “all of these pills.” (R. 1924.) He then argued that the State had violated the court’s in limine order that the State not mention “the cases pending in Cullman County, Alabama,” by twice making reference to Cullman County investigators. (R. 1924.) He requested that the court inform the jurors that all charges that had been filed against him in Cullman County had been dismissed and that those charges should not be considered as evidence against him. “[Bjarring that,” Culver argued, “we have to ask for a mistrial in this case because of that.” (R. 1925.) In response, the State argued that Culver had opened the door to questions about the items taken to DFS because he had questioned Det. McGairty extensively during his cross-examination about the results of the DFS report, and he had elicited testimony about Cullman County investigators by asking questions about the search in Cullman County. Cul-ver then again moved for a mistrial, and the trial court took the matter under advisement until the following day. The trial court denied the motion for a mistrial when the trial proceedings reconvened. The trial court instructed the jury that it had previously ruled that the list of items sent to DFS was not relevant, and that the jury was to consider only relevant evidence. The jury stated that it eould follow the court’s instructions and consider only relevant evidence. (R. 1940.) The court then instructed the jury that Cullman County investigators had been mentioned in the previous day’s testimony because “when one jurisdiction goes into the police jurisdiction of another county or city, they take investigators from that jurisdiction with them.” (R. 1940-41.) The court further instructed the jury that some items of evidence had been removed from the lake house in Cullman County and had been submitted to DFS and that Cullman County investigators were involved for that reason. Culver did not object to the court’s curative instructions.
Culver’s motion for a mistrial as to Det. McGairty’s testimony about the drugs submitted to DFS was clearly related to the charges of furnishing drugs to a minor, and Culver was acquitted of that charge. Thus, the trial court’s ruling on that issue is not subject to appellate re *520 view. See Flowers v. State, 922 So.2d 938, 957 (Ala.Crim.App.2005).
Furthermore, Culver’s motion for a mistrial was untimely, and his arguments regarding the items submitted to DFS for testing would not have been preserved for appellate review, even if the issue was subject to appellate review. Although Cul-ver asked the trial court to be permitted to make a motion later and to have it considered timely, this request came after Det. McGairty had already testified, without objection from Culver, about a lengthy list of items that had been submitted to DFS, and had been asked and had provided an answer to yet another question. Culver’s subsequent objection to testimony about the items submitted to DFS was made well after the grounds for the motion became apparent. Therefore, the portion of the motion for a mistrial related to testimony about items submitted to DFS for testing is not properly before this Court for review.
Similarly, Det. McGairty testified without objection that investigators from Cull-man County had submitted to DFS items that had been taken during the search in Cullman County. Culver objected only later, when Det. McGairty testified that “Cullman County had a syringe” and that investigators had submitted that syringe to DFS. (R. 1922.) Because Culver failed to object following Det. McGairty’s initial testimony about Cullman County investigators, the jury had already heard testimony about those investigators, and Culver’s motion for mistrial as to that testimony was also untimely.
Based on the foregoing, this issue is not properly before this Court for our review.
IX.
Culver contends that the trial court erred when it allowed into evidence testimony that a thumbprint filmed on the 8mm videotape had been identified as Cul-ver’s. Culver argues that the testimony about procedures used to “capture” the image of the thumbprint from the videotape did not meet the requisite standards of reliability and that the testimony was inadmissible.
Culver filed a motion to suppress testimony that his fingerprint had been identified from an image that appeared on the 8mm videotape. He argued that law-enforcement personnel had captured an image of a thumbprint that had been filmed on the 8mm videotape and had enhanced the print and determined that it was Cul-ver’s. He argued that the procedures used by the law-enforcement personnel who obtained the image of the thumbprint from the videotape did not meet the standards recommended by the Scientific Working Group on Imaging Technologies (“SWGIT”) and that their procedures did not satisfy the requirements set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Frye v. United States, 293 F. 1013 (D.C.Cir.1923). Therefore, Culver argued, testimony about the fingerprint comparison was inadmissible. The trial court heard testimony and extensive arguments from counsel outside the jury’s presence, and the trial court denied the motion. The court found that the evidence presented was not scientific evidence and that scientific standards regarding admissibility did not apply; the Court specifically noted that Daubert and Frye did not apply. The court stated that the videotape depicted the image of the thumb, and that the State had simply made a still photograph of the print from the videotape and compared the image to a known print to identify it. The court determined that the State did not create the videotape and that it was therefore not bound by any *521 suggested standards about digital reproduction.[6]
At the hearing on Culver’s motion to suppress, the State presented the testimony of Tom McDanal of the Hoover Police Department, who had observed the ridge detail of a thumb that was depicted in the 8mm videotape. McDanal testified that he made a VHS-format copy of the 8mm videotape and that he had viewed that videotape on his computer. McDanal paused the videotape on the image depicting the ridge detail of the thumb, saved the image onto a computer disk, and gave the disk to evidence technician Mark Tant. McDanal testified about the computer software that he used to view the videotape and to save the image of the thumb, and he testified that he had received training in the use of the software. The trial court viewed in chambers the image on the computer disk McDanal created from the videotape.
Mark Tant testified that he had viewed the image on the disk McDanal provided and that he printed copies of the image from his computer. Tant provided a copy of the print to Carol Walker, a certified fingerprint examiner with the Birmingham Police Department. Tant stated that Walker requested a smaller copy of the image, so that the image would be closer in size to the known fingerprint. Tant reduced the size of the image on his computer and printed that image for Walker.
Walker testified that she received two photographs of the thumbprint and that she compared the prints from the photographs with Culver’s known prints. Walker determined that the photographs contained enough detail to make a comparison. She identified 12 points of comparison between the 2 prints and determined that the print on the photograph depicted Culver’s right thumb.
The trial court did not abuse its discretion when it denied Culver’s motion to suppress testimony about the thumbprint taken from the 8mm videotape. “‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ ” Lewis v. State, 24 So.3d 480, 491 (Ala.Crim.App.2007) (opinion on return to remand), quoting Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). Rule 702, Ala.R.Evid., provides that “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” The admissibility of fingerprint evidence is governed by Rule 702:
“Because this case does not involve DNA evidence, the Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993),] standard does not apply. Also, because print identification involves subjective observations and comparisons based on the expert’s training, skill, or experience, we conclude that it does not constitute scientific evidence and that, therefore, Frye [v. United States, 293 F. 1013 (D.C.Cir.1923),] does not apply. Rather, print identification constitutes specialized knowledge that may be helpful to the jury in understanding or determining the facts. Therefore, Rule 702, Ala.R.Evid., gov *522 erns the admissibility of [the fingerprint examiner’s] testimony.”
Barber v. State, 952 So.2d 393, 417 (Ala.Crim.App.2005).
Although an image of the thumbprint was used for comparison to Culver’s known print in this case, no scientific testing or experiments were involved. Rather, the print provided from the videotape was the exact image of the thumb, itself, rather than an ink lift of a latent or partial print, and it was arguably even more reliable as a source for comparison purposes than a lifted print because it was not subject to decomposition or degradation over time. The process by which McDanal and Tant obtained the image did not involve scientific experiments or testing, but simply the “capturing” of a single image from the videotape recovered from Culver’s residence, which was then printed out as a photograph so that it could be compared by Walker to Culver’s known fingerprints. Because the testimony about the print identification constituted specialized knowledge that would have been helpful to the jury, we hold that the evidence was admissible under Rule 702, Ala.R.Evid., and that the trial court correctly concluded that neither Daubert nor Frye were applicable. Therefore, the trial court did not abuse its discretion when it denied Cul-ver’s motion to suppress the thumbprint identification testimony, and Culver is not entitled to any relief on this claim of error.
X.
Culver next contends that the trial court erred when it admitted into evidence testimony about the “default date,” January 1, 1994, displayed on the 8mm video camera S.B. gave to the police. (Culver’s brief at p. 47.) The 8mm videotape the police found in the storage room had a date stamp of January 11, 1994. Culver contends that the proximity of the date on the videotape to the default date on the video camera might have caused the jury to believe that the recovered videotape had been filmed using the video camera S.B. recovered, even though no evidence established a connection between that camera and the videotape.[7] The trial court overruled Culver’s objection, and stated that the jury would be permitted to hear the testimony and then to determine what weight to give the evidence.
“ ‘ “The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). In addition, “[t]rial courts are vested with considerable discretion in determining whether evidence is relevant, and such a determination will not be reversed absent plain error or an abuse of discretion.” Hayes v. State, 717 So.2d 30, 36 (Ala.Crim.App.1997).’
“Gavin v. State, 891 So.2d 907, 963 (Ala.Crim.App.2003).”
Woods v. State, 13 So.3d 1, 23 (Ala.Crim.App.2007).
Rule 401, Ala.R.Evid., defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the *523 action more probable or less probable than it would be without the evidence.” Although relevant evidence is admissible, Rule 402, Ala.R.Evid., it “may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Rule 40B, Ala.R.Evid.
Det. McGairty testified that when he turned the video camera on, it displayed a default date of January 1, 1994. The videotape depicting the sexual acts displayed a date of January 11, 1994. Testimony about the default date was relevant because it provided a possible connection between Culver, the videotape, and the camera recovered from the Culver residence, which was relevant to the charge of possession of obscene matter. That testimony was not misleading or confusing, and it did not result in unfair prejudice to Culver.
‘“Unfair prejudice’ under Rule 403 has been defined as something more than simple damage to an opponent’s case. Dealto v. State, 677 So.2d 1236 (Ala.Crim.App.1995). A litigant’s case is always damaged by evidence that is contrary to his or her contention, but damage caused in that manner does not rise to the level of ‘unfair prejudice’ and cannot alone be cause for exclusion. Jackson v. State, 674 So.2d 1318 (Ala.Crim.App.1993), reversed in part on other grounds, 674 So.2d 1365 (Ala.1994). ‘Prejudice is “unfair” if [it] has “an undue tendency to suggest decision on an improper basis.”’ Gipson v. Younes, 724 So.2d 530, 532 (Ala.Civ.App.1998), quoting Fed.R.Evid. 403 (Advisory Committee Notes 1972). See, also, Rule 403, Ala. R. Evid.”
Ex parte Vincent, 770 So.2d 92, 96 (Ala.1999).
Based on the foregoing, we conclude that the trial court did not abuse its discretion when it allowed testimony about the default date displayed on the video camera. The testimony was relevant and did not result in unfair prejudice to Culver.
XI.
Culver contends that the trial court did not adequately instruct the jury on constructive possession and circumstantial evidence. Specifically, Culver argues that the trial court failed to charge the jury that, to find Culver guilty of possession of obscene matter based on constructive possession, it had to find that Culver had “ ‘knowledge of the presence of the item in the place as described.’” (Culver’s brief at p. 50, quoting R. 2547.) Culver also argues that he had requested a circumstantial-evidence charge that included an instruction that, in order to find Culver guilty, the evidence had to exclude any reasonable theory of his innocence; that if there was any reasonable theory consistent with Culver’s innocence, the jury had to give Culver the benefit of the doubt; and that if there were two possible explanations for the circumstances, one of which indicated Culver was not guilty, then the jury had a duty to give Culver the benefit of the doubt. (Culver’s brief at p. 51.) The trial court stated that it would charge the jury on constructive possession and circumstantial evidence, and it provided to the parties its proposed charges. Culver argued during the charge conference and after the court charged the jury that the trial court’s instructions on constructive possession and circumstantial evidence were inadequate, and he raised the specific claims he now raises on appeal.
A trial court has broad discretion in formulating its jury charge, so long as the charge accurately reflects the law and the facts of the case. E.g., Powers v. *524 State, 963 So.2d 679 (Ala.Crim.App.2006). We have reviewed the trial court’s jury charge, and we hold that the court’s instructions on constructive possession and circumstantial evidence accurately reflect the applicable law.
With respect to Culver’s argument regarding the trial court’s charge on constructive possession, we find that the trial court properly instructed the jury.
“ ‘ “Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item.” United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.1980); United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir.1974). “Constructive possession may be determined by weighing those facts which tend to support the defendant’s necessary control over the substance against those facts which demonstrate a lack of dominion and control.” Roberts [v. State], 349 So.2d [89] at 91 [ (Ala.Crim.App.1977) ].’
“German v. State, 429 So.2d 1138, 1140 (Ala.Crim.App.1982).”
Flake v. State, 980 So.2d 440, 443 (Ala.Crim.App.2007). The trial court defined constructive possession using language very similar to that quoted above. (R. 2518-19.) The court also informed the jury that to establish Culver’s guilt, the State had to prove that Culver “knowingly” possessed a visual reproduction of obscene matter, and the court defined “knowingly” for the jury. (R. 2514, 2517.) The court’s instructions on constructive possession accurately reflected the law applicable to the case.
Likewise, with respect to Culver’s argument regarding the trial court’s circumstantial-evidence charge, we find that the court properly instructed the jury. The trial court defined circumstantial evidence, gave examples of circumstantial evidence, and repeatedly instructed the jury that circumstantial evidence was sufficient to support a conviction only if the jury was convinced of Culver’s guilt beyond a reasonable doubt. (R. 2520-22.) The court instructed the jury that “[a] conviction may not be had upon circumstantial evidence if there is an inference consistent with the innocence of the defendant” (R. 2521), and instructed the jury that a reasonable doubt leading to acquittal could come from the evidence, lack of evidence, or any part of the evidence. We conclude that the court’s jury charge adequately instructed the jury on circumstantial evidence.
We note, furthermore, that in Ex parte Carter, 889 So.2d 528 (Ala.2004), the Alabama Supreme Court held that a circumstantial-evidence instruction is not required even when all the evidence is circumstantial, provided the jury is charged about proof and about reasonable doubt. That Court stated: *525 stantial evidence are of equal weight; all that is required to find a defendant guilty is that the jury be convinced of the defendant’s guilt beyond a reasonable doubt. Holland v. United States; Jackson v. Virginia.
*524 “[I]n Holland v. United States, 348 U.S. 121 (1954), the Supreme Court of the United States abolished the requirement that federal courts give an instruction to the effect that when the prosecution’s evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than that of guilt. The Supreme Court stated that ‘the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.’ 348 U.S. at 137. See also Jackson v. Virginia, 443 U.S. 307, 326 (1979) (rejecting the rule that in a case based solely on circumstantial evidence the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt). Direct and circum-
*525 “We find that the trial court properly instructed the jury in this case. In a criminal case in which all of the evidence is circumstantial, a jury instruction is proper if it states the elements of the crime, explains how the jury should evaluate the evidence, and instructs the jury that it can convict the defendant only if the jury finds that the State has proved each element of the crime beyond a reasonable doubt and the State has disproved the defendant’s presumption of innocence beyond a reasonable doubt. The Supreme Court of the United States in Holland stated:
“ ‘Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.’
“348 U.S. at 137-38.”
889 So.2d at 532-33. “Although a trial court may give a circumstantial-evidence instruction if it finds the instruction appropriate or helpful in a particular case, a trial court is not required to give the jury such an instruction merely because all of the State’s evidence in a criminal case is circumstantial.” 889 So.2d at 533.
Here, the jury was properly instructed on the elements of the crime and that it had to find those elements beyond a reasonable doubt before it could find Culver guilty. Thus, a circumstantial-evidence charge was not even required here, and Culver’s claim to the contrary is meritless.
XII.
Culver contends that the trial court erred when it denied his request for a jury instruction on attempted possession of obscene matter as a lesser-included offense of possession of obscene matter. He argues, specifically, that the presence of his thumbprint on the outer case of the videotape established only that he touched the videotape, and not that he actually picked it up or possessed it. Culver presented this argument to the trial court, and the court denied his request for a jury instruction on attempted possession.
“A defendant has the right to request a jury charge based upon any material hypothesis that the evidence tends to establish, and where there is a reasonable theory to support a requested charge as a lesser-included offense, a trial court’s refusal to give the charge is reversible error. See Ex parte Chavers, 361 So.2d 1106 (Ala.1978); Miller v. State, 675 So.2d 534 (Ala.Crim.App.1996). A court may, however, properly refuse to charge on a lesser-included offense ‘(1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury.’ Chavers, 361 So.2d at 1107 (emphasis added). Furthermore, § 13A-1-9(b), Aa.Code 1975, states that ‘[t]he court shall not charge the jury with respect to an included offense unless there is a *526 rational basis for a verdict convicting the defendant of the included offense.’ ”
Ryan v. State, 865 So.2d 1239, 1244 (Ala.Crim.App.2003).
The trial court did not err when it refused to instruct the jury on attempted possession of obscene matter. The evidence indicated that the videotape had been placed in the storage room at Cul-ver’s residence that was accessible only through the master-bedroom closet, and the videotape depicted Culver engaging in sexual acts with a naked female that the State alleged to be K.W. There is no reasonable theory of the evidence that the presence of Culver’s thumbprint on the videotape’s case established that Culver had in some way touched the videotape but had not actually possessed it. “The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture.” Broadnax v. State, 825 So.2d 134, 200 (Ala.Crim.App.2000), aff'd, 825 So.2d 233 (Ala.2001). Although Culver argues that he could have touched the videotape without actually gripping or possessing it, there was no evidence, only conjecture, supporting that argument.
Moreover, the State presented evidence tending to establish that Culver possessed additional obscene matter — the Polaroid photographs depicting the naked female that the State argued was K.W. — that were found in envelopes between books in the playroom/office in the Culver residence.[8] Culver does not argue on appeal that he only attempted to possess the photographs. Proof of Culver’s possession of the photographs was sufficient, by itself, to support the conviction for possession of obscene matter.
For these reasons, the trial court did not err when it denied Culver’s request for a jury charge on attempted possession as a lesser-included offense.
XIII.
Culver contends that the evidence was insufficient to sustain his convictions for possession of obscene material. Specifically, Culver argues that the State failed to prove that the female depicted in the photographs and on the videotape was a minor. As discussed in Part II of this opinion, possession of the photographs and the videotape constituted only a single criminal act; therefore, we consider Cul-ver’s argument only to determine whether the State established sufficient evidence to support a single count of possession of obscene matter, and whether the trial court erred when it denied Culver’s motions for a judgment of acquittal.
“Initially, we note our well-established standard for reviewing challenges to the sufficiency of the evidence: “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting *527 O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).”
Oliver v. City of Opelika, 950 So.2d 1229, 1230 (Ala.Crim.App.2006). Section 13A-12-192(b), Ala.Code 1975, the statute under which Culver was charged, provides that “[a]ny person who knowingly possesses any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sado-maso-chistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony.”
The evidence indicated that the police found Polaroid photographs depicting the genitalia of a naked female inside envelopes between books in the playroom/office next to K.W.’s bedroom in the Culver residence. An 8mm videotape depicting what appeared to be the same female depicted in the photographs was recovered two days later in a storage room of the Culver residence, an area that was accessed through the master bedroom. For the first several minutes of the videotape, the female’s genitals were manually manipulated and her vagina was penetrated digitally and by what appeared to be a plastic vaginal syringe. The sheets beneath the female’s body in the photographs and on the videotape appeared to be the same color and they bore the same distinctive pattern. A variety of other details in the photographs of the female are similar to those in the first portion of the videotape, including the placement of the female’s hands and the nail polish on the fingernails, suggesting that the photographs were taken and the film was made at or near the same time and in the same location.
K.W. testified that she recognized herself in the photographs. She testified that she recognized her hands, her fingernails, her vagina and shaved pubic region, and the blue sheets on which she was lying. K.W. testified that the sheets had been used on the bed her mother and Culver shared at the house at Smith Lake. S.B. also recognized KW.’s body and Culver’s genitalia in the photographs. At trial, S.B. viewed the photographs and testified that she recognized K.W.’s slender hands and her body, including K.W.’s shaved pubic area. S.B. also testified that she recognized the sheets on which K.W. was lying; those sheets had been purchased for Cul-ver for Christmas 2002, and they were used exclusively at the lake house. Photographs of K.W.’s hands and genitalia were taken at a clinic and were displayed to the jury; photographs of S.B.’s hands and genitalia were taken and they, too, were displayed to the jury. In addition, Culver stipulated that he was the man in the videotape.
Viewing the evidence in the light most favorable to the State, we conclude that the State established a prima facie case of possession of obscene matter and that the trial court properly submitted this case to the jury. From the evidence, the jury could have reasonably concluded that it was, in fact, K.W., a minor, who was depicted in the photographs and on the Arid- *528 eotape and, that Culver was, in fact, in constructive possession of the photographs and the videotape. Moreover, we note that although Culver attempted to undermine S.B.’s identification of her daughter in the photographs during cross-examination and attempted to elicit testimony suggesting that K.W. was not the female in the second portion of the videotape — the portion of the videotape depicting a woman’s back and buttocks and digital penetration of the woman’s vagina and anus— these factors do not, as Culver argues, affect the sufficiency of the evidence, but go to the weight of the evidence. See Part XIV of this opinion. K.W. positively identified herself in the photographs and, even if K.W. was not the woman depicted in the second portion of the videotape, K.W. testified that she was depicted on the first portion of the videotape. Culver’s assertion that a second woman might have been depicted in the second portion of the videotape does not negate the fact that the State presented evidence indicating that Culver also photographed and filmed K.W.’s nude genitalia. Therefore, the trial court properly denied Culver’s motions for a judgment of acquittal.
XIV.
Culver contends that the jury’s verdict was against the weight of the evidence. He argues that, although this Court does not generally reweigh the evidence or evaluate witness credibility, nonetheless, in this case he is entitled to a reversal because, he says, the evidence was “uncertain, highly suspect, compromised, biased, financially motivated, and outright impeached .... ” (Culver’s brief at p. 66.) Culver filed a motion for a new trial in which he challenged the weight of the evidence. The trial court denied the motion without a hearing.
A trial court’s ruling on a motion for a new trial will not be reversed unless the trial court abused its discretion. See, e.g., State v. Williams, 679 So.2d 275, 276 (Ala.Crim.App.1996). In arguing that the trial court erred when it denied his motion for a new trial, Culver challenges the jury’s decision based on his own analysis of the weight of the evidence and the credibility of the witnesses. However, as Culver concedes:
“ “We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.’ Whitt v. State, 733 So.2d 463, 470 (Ala.Crim.App.1998). ‘ “[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.” ’ Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). ‘ “When the jury has passed on the credibility of evidence tending to establish the defendant’s guilt, this Court cannot disturb its finding.” ’ Rowell v. State, 647 So.2d 67, 69 (Ala.Crim.App.1994), quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App.1982). ‘Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.’ Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996), aff'd, 719 So.2d 256 (Ala.1998).”
Clark v. State, 896 So.2d 584, 638 (Ala.Crim.App.2000) (opinion on return to remand and on application for rehearing).
Here, the jury resolved issues regarding the weight and credibility of the evidence in favor of Culver with respect to the charges of domestic violence and furnishing drugs to a minor. The jury resolved the issues regarding the weight and the credibility of the evidence against Culver as to the charges of possession of obscene *529 matter.[9] Like the trial court that denied Culver’s motion for a new trial, this Court also is not at liberty to reweigh the evidence. Once the State presented a prima facie case, the evaluation of all of the evidence, including consideration of any inconsistencies in the evidence and any alleged witness bias, was properly left to the jury for its resolution. Culver is not entitled to any relief on this claim of error.
XV.
Finally, Culver contends that, even if no single error was sufficiently prejudicial to require reversal, the accumulated errors affected his substantial rights and require a reversal of the case and remand for a new trial.
“As the Alabama Supreme Court has so succinctly stated, the cumulative-error rule is as follows: ‘[Wjhile, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, [Ala.R.App.P.,] if the accumulated errors have “probably injuriously affected substantial rights of the parties,” then the cumulative effect of the errors may require reversal.’ Ex parte Woods, 789 So.2d 941, 942 n. 1 (Ala.2001) (quoting Rule 45, Ala.R.App. P.).”
Brownfield v. State, [Ms. CR-04-0743, April 27, 2007] — So.3d -, - (Ala.Crim.App.2007).
We have examined all of Culver’s allegations and we found one error, addressed in Part II of this opinion, which requires a remand so that the trial court can set aside one of the convictions and sentences for possession of obscene matter. However, we found no other error in the specific instances alleged by Culver, and therefore, we conclude that there exists no cumulative error requiring reversal based on those allegations.
XVI.
Based on the foregoing, we affirm one of Culver’s convictions for possession of obscene matter, and the sentence imposed for that conviction. However, for the reasons set forth in Part II of this opinion, we reverse the conviction and sentence for the second charge for possession of obscene matter and remand this case for the trial court to vacate that second conviction and sentence.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McMILLAN, SHAW, and WELCH, JJ., concur.
WISE, J., concurs in the result.
BASCHAB, P.J. concurs in part; dissents in part, with opinion.

. We use initials throughout this opinion for both the juvenile and her mother in order to preserve the juvenile's anonymity. See Rule 52, Ala.R.App.P.

. Although Culver argued in the trial court that the two charges of possession of obscene matter were duplicitious and that one charge should be dismissed or the two charges should be consolidated into one charge, Cul-ver acknowledged in the trial court that the two charges could be tried jointly if they were not consolidated. (R. 71, 251, 258.) Culver's argument that he should not have been charged with or convicted of two counts of possession of obscene matter is addressed in Part II of this opinion.

. The legislature amended the definition of "matter” in § 13A-12-190(12) effective June 1, 2006. The definition now reads: "Any book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture, video cassette, tape, record, digital video disc (DVD), video compilation, or electronic depiction in a comparable format, or an image, file, download, or other content stored, or reproduced by using a computer or electronic device or other digital storage, or any other thing, articles, or materials that either are or contain a photographic or other visual depiction of a live act, performance, or event.”

“2 That definition now appears at § 13A-12-200.1(15), Ala.Code 1975.

“3 Section 13A-12-200.H15), Ala.Code 1975, defines ‘material’ as:
“ ‘Any book, magazine, newspaper, printed or written matter, writing, description, picture, drawing, animation, photograph, motion picture, film, video tape, pictorial representation, depiction, image, electrical or electronic reproduction, broadcast, transmission, telephone communication, sound recording, article, device, equipment, *514 matter, oral communication, live performance, or dance.’ ”
883 So.2d at 722.

. We note that other states have adopted a different interpretation of the word "any” in child-pornography statutes. See, e.g., Commonwealth v. Davidson, 938 A.2d 198 (Pa.2007), and the cases cited therein.

. We also note that later during the trial. Culver argued that the fingerprint lifted from the exterior of the 8mm videotape should not be admitted and testimony that it was his fingerprint should not be allowed because, he said, the State had failed to prove that the videotape from which the print was lifted was the original videotape seized from his residence. The trial court considered testimony and arguments presented on the issue of the admissibility of the fingerprint lift and identification and overruled Culver’s objections. During its consideration of Culver’s motion, the court stated that the videotape had been admitted "long ago” and that the court had only reserved ruling on the fingerprint. Cul-ver stated, "I think that's correct, Your Hon- or.” (R. 2282.)

. After the trial court denied the motion to suppress, Culver stipulated, without waiving any argument about the admissibility of the identification testimony, that the hand depicted in the videotape was his hand. (R. 1728-29.)

. S.B. testified that she found the video camera in the playroom/office of the family residence. She stated that she had previously seen the camera in Culver's vehicle and that the camera did not belong to her or to her children. (R. 1400-02.)

. As discussed in Part II of this opinion, the possession of the videotape and the photographs supported only one charge of possession of obscene matter.

. As discussed in Part II of this opinion, the possession of the videotape and the photographs supported only one charge of possession of obscene matter.