The appellant, Buddy Snell, was indicted for enticing a child to enter a house for immoral purposes in violation of §13A-6-69, Code of Alabama 1975, and for two counts of sodomy in the second degree in violation of § 13A-6-64, Code of Alabama 1975. A jury acquitted Snell of the enticing charge, but found him guilty of both sodomy counts. The trial court sentenced Snell to two years in prison for each count, the sentences to be served concurrently.
A thorough rendition of the facts is required for an understanding of the issues involved in this case. The evidence adduced at trial tended to show the following. The victim, M.W., was 15 at the time of trial and 12 at the time of the alleged offenses. Her brother, N.W., is one year younger than M.W. They lived in Union Grove, Marshall County, and Snell was their next door neighbor.
M.W. testified that she and her brother frequently went to the Snells' trailer. She *Page 788 
said that Snell would invite them in or have them over for dinner, and that at these times his wife and young son were present. M.W.'s mother worked in Huntsville at this time. M.W. said that while they were at Snell's, he put a movie into the VCR and asked if she and N.W. wanted to watch it. She said that the movie showed a man and woman having sex, and that she and her brother watched it for about 30 minutes. M.W. testified that during this time, Snell's wife was cooking and his son was running back and forth in front of the television. M.W. testified that while the movie was on Snell stood behind a chair, rubbing his hands up and down his crotch.
She said that during the course of about a year, Snell showed this type of movie about 15 other times, sometimes when other children from the neighborhood were present. Snell's wife and son were not always home when he showed the movies, M.W. said. Sometimes Snell touched himself while watching the movies, M.W. said. She said that she never told her mother that they watched these movies.
M.W. also testified that Snell asked her to go to the grocery store with him one day. She said that he drove down a dirt road, then stopped the car and got out. M.W. said Snell acted as though he were going to get something out of the back of the car, but he just stood there for a minute. She said he then came around to the passenger side of the car and opened the door.
M.W. said Snell pushed himself onto her and turned her so that her feet were out of the car. He put his hand under her shirt and pulled her pants down to her knees. M.W. said she asked him to stop, but he did not. Snell had oral sex with her, M.W. testified, then got up and walked around the side of the car. M.W. said she pulled her pants up, and Snell asked if she liked it. She said she did not answer him. Snell apologized and said it would not happen again, M.W. said, adding that she believed him. She said she did not tell anyone what happened.
About two weeks later, M.W. said, she went to Snell's trailer before school to use the telephone. Mrs. Snell was not home, but Snell and his son were there. M.W. said she went to use the bathroom. As she was buttoning her pants, she said, Snell pushed open the bathroom door. She said he put his arm around her and put her on the bathroom floor. He pulled her pants down and laid his arm across her arms and again performed oral sex on her. Snell's son knocked on the bathroom door. Snell told M.W. that his condom was in his wallet in the living room, so they could not do anything anyway.
M.W. said she did not tell her mother about the incident because she was scared, but she did tell her brother N.W. and a friend. N.W. told their mother what had happened.
N.W. testified that he and M.W. had watched a "dirty" movie at Snell's house called "Have a Nice Lay." He said the movie, which Snell had put into the VCR, started with four people having sex. N.W. also testified that Snell told him he "would like to have" his sister. N.W. said that Snell told N.W. that his sister was pretty, then rubbed himself. N.W. said M.W. was present when Snell would make those comments. He also said Snell would tell him and M.W. about having sex with his wife. N.W. also testified that M.W. told him about what had happened in Snell's bathroom a week or two before his mother got into a fight with Snell's wife.
Margaret Walker of the Department of Human Resources in Marshall County testified that she received a report that M.W. and N.W. were being shown pornographic movies and that M.W. had been sexually abused. She said that in investigating this case, she interviewed M.W. and N.W., other neighborhood children who had seen the movies, M.W.'s mother, Snell, and his wife.
Walker said Snell denied showing the movies or touching M.W. inappropriately. She said he admitted talking with her about sex, about different styles of sex, and about how he and his wife had sex. He also said he had bought condoms for one of the older boys in the neighborhood. Walker also said Snell told her M.W. had exposed herself to him.
Snell's wife, Cynthia, testified that the children often came to their trailer and that several times they asked about sexual matters. *Page 789 
She also testified that M.W.'s dog would come into their yard and rip insulation from under the trailer, chase her cats, and bark until all hours of the night. The dog also wet on her flowers and killed them. She said she complained to the children's mother.
Cynthia Snell said that one day, M.W.'s mother called Snell, "cussed him out," and threatened to kill their cats. Subsequently, Cynthia Snell said, she saw M.W.'s dog urinating on her flowers again, and she chased it with a "Nerf" baseball bat. M.W.'s mother saw her and "started in on" Cynthia Snell, calling her a "total bitch." This escalated into a fight, and Cynthia Snell had M.W.'s mother arrested. The next day, Cynthia Snell said, M.W. and her mother went to the Department of Human Resources and lodged the complaint against Snell.
Snell testified and denied making any sexual advances toward M.W. He also denied showing any "R-rated" movies to the children.
 I
Snell contends that the trial court erred in denying his motion for a severance. In his motion, Snell requested that the enticing charge be tried separately from the two sodomy counts. He argues that trying the enticement charge with the sodomy charges allowed the jury to hear evidence of collateral bad acts, and that such evidence should not have been admitted.
The law in Alabama is that two or more offenses may be joined in an indictment if they are based on the same conduct or are otherwise connected in their commission. Ala.R.Crim.P. 13.3. The trial court may order separate trials for the offenses if it appears the defendant will be prejudiced by the joinder of the offenses. Ala.R.Crim.P. 13.4. "The burden of proof is on the defendant to demonstrate specific and compelling prejudice which the trial court cannot protect against and which causes him to receive an unfair trial." Summerlin v. State,594 So.2d 235, 236 (Ala.Crim.App. 1991). See also Hinton v. State,548 So.2d 547 (Ala.Crim.App. 1988), aff'd, 548 So.2d 562
(Ala. 1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419,107 L.Ed.2d 383 (1989). "The granting of a severance rests within the discretion of the trial court and its refusal to sever counts or defendants that are properly joined will only be reversed for a clear abuse of discretion." Summerlin v. State, 594 So.2d at 236. See also King v. State, 518 So.2d 880
(Ala.Crim.App. 1987).
In Summerlin, the appellant was indicted on charges of arson, sexual abuse, and assault. He argued that the arson charge should have been severed from the sexual abuse and assault charges. In Summerlin, the victim and the appellant had once lived together, but the victim was living with another man at the time of the offenses. The appellant had made remarks about killing the man and shooting the victim between the legs. He also had talked of burning their trailer. When the appellant saw the victim a few days after he made these threats, he asked her who she was living with and told her he was going to kill her. He started cutting her clothes off and then cut her breast and the inside of her leg. The appellant also touched the victim's vaginal area. A few days after that incident, the man with whom the victim lived awoke and discovered his mobile home was on fire. Investigators determined that the fire had been caused by an accelerant. The jury convicted the appellant of sexual abuse and assault but acquitted him of arson. This court held in Summerlin that the offenses "clearly" were connected.
In this case, the enticement charge was even more closely connected with the sodomy charges than the arson charge was connected to the sexual abuse and assault charges inSummerlin. See, e.g., Tedder v. State, 547 So.2d 599, 601
(Ala.Crim.App. 1988) (Bowen, P.J., dissenting); reversed on other grounds, Ex parte State, 547 So.2d 601 (Ala. 1989). It was logical for the trial court to believe Snell enticed M.W. into his home using the pornographic movies for the purpose of trying to convince M.W. to allow him to have oral sex with her.
Additionally, "[n]o prejudice results where the jury could easily separate the evidence of the separate crimes."Summerlin v. State, 594 So.2d at 236. Clearly the jury separated the evidence of the separate *Page 790 
crimes, as evidenced by the fact that it convicted Snell of the offense of sodomy, but not the offense of enticement. Snell did not demonstrate specific and compelling prejudice as a result of having the enticement charge tried with the sodomy charges. For that reason, we cannot find that the trial court abused his discretion in refusing to sever the enticing charge from the sodomy charges.
 II
Snell next argues that the trial court erred in refusing to allow him the opportunity to present evidence of M.W.'s general reputation in the community. During the trial, Snell tried to present evidence of M.W.'s general reputation as a whole. After a discussion between the attorneys and the trial judge over whether such evidence was admissible, the trial court ruled as follows:
"The court has indicated that the court will allow defense counsel to ask this witness about the prosecuting witness's general reputation for truth and veracity, but not as to her general reputation as a whole because of the rape shield."
Snell argues that the rape shield statute, § 12-21-203, Code of Alabama 1975, only precludes a defendant charged with a sex offense from proving the bad reputation of the victim for chastity. Snell contends that he should have been able to introduce evidence of the victim's general reputation as a whole, but specifically excluding her reputation for chastity. Because he could not introduce evidence of M.W.'s general reputation, Snell argues, he was denied a fair and impartial trial. The State argues that the defense was properly barred from delving into matters that may have revealed the victim's prior sexual history.
A witness's credibility may be impeached by one of two methods — either by showing the witness had a bad general reputation as a whole in the community, or by showing he had a bad reputation for truth and veracity in the community.Smitherman v. State, 521 So.2d 1050, 1055
(Ala.Crim.App. 1987), cert. denied, 521 So.2d 1062 (1988); C. Gamble,McElroy's Alabama Evidence, § 140.01(1) (4th ed. 1991). Generally, the impeaching party gets to choose which method to use to impeach the witness. McElroy's, supra. In this case, however, the trial court decided that to avoid running afoul of the rape shield law, the only way the defense could impeach M.W. was to test her reputation in the community for truth and veracity.
Except for calling into question the victim's chastity, it is hard to imagine why the defense would rather question the victim's reputation as a whole rather than her reputation for truth and veracity. Any other reason M.W. might have had a bad general reputation as a whole in the community would be irrelevant to the issues in this cause. Therefore, this court fails to see how limiting Snell's impeachment method to asking about M.W.'s reputation for truth and veracity in any way deprives him of a fair and impartial trial. In fact, Alabama is one of the few jurisdictions that allows inquiry into the witness's general reputation as a whole, C. Gamble,Character Evidence: A Comprehensive Approach, p. 64 (1987); most jurisdictions do not find the right to question a witness's general reputation as a whole necessary for the defendant to receive a fair and impartial trial.
Thus, we hold that trial court did not err in preventing Snell from impeaching M.W.'s general reputation as a whole.
 III
Snell also makes several arguments relating to the application of the rape shield statute. He argues that the trial court erred by refusing to allow him to introduce evidence of M.W.'s prior sexual conduct to corroborate evidence presented in his defense of fabrication and further to show an alternative source of knowledge for M.W.'s ability to describe in detail the acts that she said Snell committed. Snell maintains the trial court erred by applying the rape shield statute in this case because to do so prohibited Snell from exercising his Sixth Amendment right to cross-examination, confrontation, and compulsory process. He also argues that the strict application of the rape shield statute violates the separation of powers. Finally, he argues that the trial court *Page 791 
wrongly applied the rape shield statute to the enticement count of the indictment, as to which Snell was acquitted. Our review of the record shows that these issue were not presented to the trial court. "[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof. . . . An issue raised for the first time on appeal is not correctly before this court." Buice v. State, 574 So.2d 55, 57
(Ala.Crim.App. 1990).
 IV
Snell argues that the trial court erred by denying his motion for a judgment of acquittal as to the enticement count. If the trial court had granted this motion, Snell contends, the trial court would have instructed the jury to disregard the evidence relating to the enticement charge.
Snell's acquittal on the enticement charge renders this issue moot. "Only the count upon which appellant was found guilty is subject to appellate review." DeFries v. State, 597 So.2d 742,744 (Ala.Crim.App. 1992) (quoting Hammond v. State,354 So.2d 280, 284 (Ala.Crim.App.), cert. quashed, 354 So.2d 294
(Ala. 1977), cert. denied 439 U.S. 823, 99 S.Ct. 91,58 L.Ed.2d 115 (1978)).
 V
Snell contends that the trial court erred in denying his motion for a mistrial. Specifically, he argues that when his defense counsel made the motion, counsel told the trial court he believed the jury would consider the evidence admitted that related to the enticement charge in determining whether he was guilty of the sodomy charges. In his brief to this court, Snell argues that his position is supported by the jury's decision to acquit him on the enticement charge. He says that when it convicted him of the sodomy charges, the jury was considering what he calls the "collateral and extrinsic" evidence involving the enticement charge, "inescapably concluding that the appellant was just a 'bad guy.' "
"A motion for mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only where there is a fundamental error in the trial which would vitiate the result." Campbell v. State, 570 So.2d 1276, 1281
(Ala.Crim.App. 1990). Further, the decision of whether to grant a mistrial rests within the sound discretion of the trial court, who was in the best position to observe the evidence and listen to the witnesses. McMurphy v. State, 455 So.2d 924
(Ala.Crim.App. 1984).
As discussed in Part I of this opinion, the enticement charge was properly tried with the sodomy charges. The jury's acquittal of Snell as to the enticement charge shows that it was able to sift through the evidence to reach a conclusion based on the law and the evidence presented; it does not appear to this court that Snell was convicted merely because he was "just a 'bad guy.' " Because the charges brought in the indictment against Snell were properly tried together, evidence relating to each charge was properly before the jury. Because there was nothing improper about the evidence before the jury, there is no fundamental error. Additionally, because there was no fundamental error, the trial court did not abuse its discretion in denying Snell's motion for a mistrial.
 VI
Snell argues that the trial court committed reversible error by denying his motion for a new trial. Specifically, Snell argues, without the accusation contained in the enticement charge, the jury would not have convicted him on the sodomy charges. His acquittal on the enticement charge, Snell says, serves as new evidence, in the mode of the presumption of innocence, for which the trial court should grant a new trial. Because the jury acquitted him of the enticement charge, Snell says, he should be granted a new trial on the sodomy charges. The trial court's refusal to grant a new trial constituted abuse of discretion, he said. Snell's argument is without merit.
 "The granting or denial of a new trial on the ground of newly discovered evidence is a matter left largely to the discretion of the trial judge, whose decision will be overturned only for an abuse of that discretion. . . . An appellate court, in reviewing a grant or denial of a new trial motion, is obliged to indulge every presumption in favor of the correctness of the trial court's decision." *Page 792 
Miles v. State, 624 So.2d 700, 703 (Ala.Crim.App. 1993).
We fail to see how being acquitted of one charge in a trial where several charges are consolidated necessarily leads to a new trial on the charge for which the defendant was convicted. The elements necessary to prove the enticement charge obviously differ from the elements needed to prove the sodomy charge. Our review of the record shows that the evidence was sufficient to support Snell's sodomy conviction. Whether Snell was convicted of the enticement charge is irrelevant to whether he was guilty of sodomy. The State proved its case against Snell as to the sodomy charges, and Snell's acquittal on the enticement charge did nothing to change that. The trial court did not abuse its discretion in denying Snell's motion for a new trial.
 VII
Snell argues that the State's evidence was insufficient to support the convictions for sodomy in the second degree. A person commits the crime of sodomy in the second degree if, being 16 years old or older, he engages in deviate sexual intercourse with another person less than 16 and more than 12 years old. § 13A-6-64(a)(1), Code of Alabama 1975. "Deviate sexual intercourse" is defined as "[a]ny act of sexual gratification between persons not married to each other, involving the sex organs of one person and the mouth or anus of another." § 13A-6-60(2), Code of Alabama 1975.
The record in this case shows that the victim, M.W., was 12 years old at the time of the incident; Snell was older than 16 years of age. M.W. testified that Snell drove her to an isolated dirt road and performed oral sex on her. She further testified that he later performed oral sex on her in the bathroom of his mobile home. This evidence is sufficient to sustain a conviction for sodomy in the second degree.
AFFIRMED.
All the Judges concur.