On Return to Second Remand 

*

JOINER, Judge.
Avis Dante Hinkle was convicted of one count of trafficking in cocaine, a violation of § 13A-12-23K2), Ala.Code 1975, and one count of failure to affix a tax stamp, a violation of § 40-17A-4, Ala.Code 1975, in case number CC-08-3171; one count of unlawful possession of marijuana, a violation of § 13A-12-213, Ala.Code 1975, in case number CC-08-3172; one count of unlawful distribution of a controlled substance, cocaine, having sold a controlled substance within a three-mile radius of a school and a housing project, violations of §§ 13A-12-211, 13A-12-250, and 13A-12-270, Ala.Code 1975, and one count of failure to affix a tax stamp, a violation of § 40-17A-4, Ala.Code 1975, in case number CC-08-3174; and one count of unlawful distribution of a controlled substance, cocaine, having sold a controlled substance within a three-mile radius of a school and a housing project, violations of §§ 13A-12-211, 13A-12-250, and 13A-12-270, Ala. Code 1975, and one count of failure to affix a tax stamp, a violation of § 40-17A-4, Ala.Code 1975, in case number CC-08-3175.[1] The trial court sentenced him pursuant to the Alabama Habitual Felony Offender Act (“the HFOA”) to life imprisonment for the trafficking conviction, to 15 years’ imprisonment for the unlawful possession of marijuana conviction, to 30 years’ imprisonment for each of the distribution convictions, and to 15 years’ imprisonment for each of the 3 tax-stamp convictions, all sentences to run concurrently. See § 13A-5-9(c), Ala.Code 1975. The tri *444 al court also imposed a $50,000 fíne pursuant to § 13A-12-231(2)a., Ala.Code 1975, for the trafficking conviction. Hinkle filed a motion for a new trial. The parties expressly agreed on the record to extend the time for the court to rule on the motion to a date certain. See Rule 24.4, Ala. R.Crim. P. After conducting a hearing, the court denied the motion. This appeal followed.
This Court has remanded this case twice for the trial court to assess the penalties prescribed under the Demand Reduction Assessment Act, in accordance with § 13A-12-281, Ala.Code 1975, and to impose the fees under the Alabama Forensic Services Trust Fund, pursuant to § 36-18-7(a), Ala.Code 1975, for the trafficking-in-cocaine conviction, for the unlawful-possession-of-marijuana conviction, and for each unlawful-distribution-of-a-controlled-substance conviction. The trial court has now filed its second return to our remand, which reflects that, on remand, Hinkle was assessed $8,000, as a Demand Reduction Assessment as mandated by § 13A-12-281, Ala.Code 1975, and $400 for the Alabama Forensic Services Trust Fund, as mandated by § 36-18-7(a), Ala.Code 1975.
Because Hinkle does not challenge the sufficiency of the State’s evidence, a brief rendition of the facts will suffice. Antonio Smith, while working as an undercover informant, made four separate controlled buys of cocaine from Hinkle on May 22, May 30, July 5, and July 26, 2007. Each time, Smith telephoned Hinkle to set up the “buy,” and the calls were recorded by the police. A hidden video camera in Smith’s car recorded each transaction, and Smith and his car were searched before and after each controlled buy. Each of these transactions occurred within three miles of a school and a housing project. The substance purchased each time was analyzed and proved to be cocaine base.
On August 3, 2007, Smith telephoned Special Agent Alicia Hanne, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who was also involved with the previous drug transactions. Smith told Agent Hanne that Hinkle had a “ ‘significant amount of narcotics on him,’ ” and was “ ‘known to carry a gun.’ ” Agent Hanne and Birmingham Police Officer Julie Quigley set out in Officer Quigley’s patrol car to find Hinkle based on the information provided by Smith. Based on the information provided by Smith, they found Hinkle riding in a vehicle driven by Cedric Massengale and followed the car, also based on the information provided by Smith. Massengale abruptly stopped the vehicle in the middle of the street and backed up, almost striking Quigley’s patrol car. As a result, the officers initiated a traffic stop for improper backing. Officer Quigley approached the driver’s side of the car while Agent Hanne approached the passenger side of the vehicle, where Hin-kle was seated. Massengale told Officer Quigley that he did not have a driver’s license or proof of insurance. Officer Quigley observed in plain view a Tussionex brand bottle of cough syrup by Massen-gale’s right foot, which contained a controlled substance. The bottle’s label had been torn off. Massengale admitted that the bottle belonged to him. Officer Quig-ley ordered Massengale to get out of the car, and she placed him under arrest for unlawful possession of a controlled substance. A search of Massengale’s person revealed Lortab pills and plastic baggies.
While she was talking with Hinkle, Agent Hanne, having prior knowledge that Hinkle often carried a firearm, noticed a bulge under the passenger-side floor mat at Hinkle’s feet. Agent Hanne asked Hin-kle to step to the back of the car. A significant amount of drugs, which proved to be cocaine and marijuana, was found *445 under the floor mat. Thereafter, the officers conducted an inventory search of the vehicle and found two digital scales; they also found plastic baggies in both Hinkle and Massengale’s pants pockets. Subsequent analysis of the contraband revealed 83.63 grams of powder and crack cocaine and 23.06 grams of marijuana.
I.
Hinkle argues that the trial court erred when it joined the charges against him for trial. He claims that the two distribution charges should not have been consolidated with the trafficking charge because, he says, the evidence of one offense would not have been admissible at the trial of the other offenses and the consolidation therefore prejudiced him. The State contends that consolidation was proper because, the State says, the evidence of cocaine distribution was admissible to show constructive possession in the trafficking case.
Before trial, on November 24, 2008, the State moved to consolidate the indictments pursuant to Rule 13.3, Ala. R.Crim. P., arguing that the charged offenses were of the same or similar character or based on the same conduct or otherwise connected in their commission or alleged to have been a part of a common plan or scheme. (C. 114-15.) Hinkle was charged in six separate indictments with various drug-related offenses.[2] (C. 68-75.) The trial judge consolidated the cases on February 2, 2009. (C. 3.) Hinkle filed a motion to sever on March 31, 2009, arguing that the consolidation of the trafficking case and the distribution cases would prejudice him, that the offenses were not of the same or similar character or close in time, that they were based on different conduct or were otherwise disconnected in their commission, and that they were not part of a common plan or scheme.[3] (C. 121-24.) After conducting a hearing, the trial court denied the motion to sever, finding as follows:
“THE COURT: And I do think the State presents a good argument in regard to the constructive possession is *446 sue, that actual possession is actually something that would be admissible in the case[-in-]chief in the trafficking case.
[[Image here]]
“THE COURT: I recognize the trafficking and possession of marijuana [are] separate. There are the same law enforcement officers involved in that traffic stop as were involved in the making of the distribution cases.
[[Image here]]
“THE COURT: It does happen four days, five days after the last sale is made.
[[Image here]]
“THE COURT: I do find that the admission of 404(b)[, Ala. R. Evid.,] 2001 distributions would have a substantial prejudicial effect on the client. That is why I’m keeping those out. However, I do believe the entirety of these cases, these six indictments are so closely related in time and facts, and I think that the State does have the right to prove actual knowledge in the trafficking case by proof of the fact that he — their argument that he was involved in the distribution of cocaine. And therefore, he had actual knowledge of the drugs present in the trafficking case. So, I’m going to keep them consolidated.”
(R. 8-12.)
“A trial court is vested with substantial discretion in deciding whether to consolidate cases, and its decision as to consolidation will be reversed only for a clear abuse of that discretion. See Snell v. State, 677 So.2d 786, 789 (Ala.Crim.App.1995).” Culver v. State, 22 So.3d 499, 507 (Ala.Crim.App.2008). The consolidation of separate indictments, so that the accused may be tried in one trial, is specifically provided for in Rule 13.3(c), Ala. R.Crim. P. That rule states, in relevant part:
“If offenses ... are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together ... if the offenses ... could have been joined in a single indictment, information, or complaint.”
Rule 13.3(a), Ala. R.Crim. P., provides, in part:
“(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
“(1) Are of the same or similar character; or
“(2) Are based on the same conduct or are otherwise connected in their commission; or
“(3) Are alleged to have been part of a common scheme or plan.”
In Ex parte Scott, 728 So.2d 172 (Ala.1998), the Alabama Supreme Court said as follows regarding the consolidation of offenses:
“ In Yelder v. State, 630 So.2d 92 (Ala.Cr.App.1991), rev’d on other grounds, 630 So.2d 107 (Ala.1992), this Court held:
“ ‘ “Joinder of offenses is permitted if the offenses 1) share the same or similar characteristics, or 2) involve the same conduct or connection in their commission, or 3) are part of a common scheme. See Rule 15.3(a), [Ala.] R.Crim. P. Temp, (now Rule 13.3(a), [Ala.] R.Crim. P.). See also Butler v. State, 439 So.2d 210 (Ala.Cr.App.1983). ‘Joinder, and thus consolidation, is appropriate where the crimes are of similar character, meaning nearly corresponding, resembling in many respects, or having a general likeness. United States v. Werner, 620 F.2d 922, 926 (2d Cir.1980).’ Ex parte Hinton, *447 548 So.2d 562, 566 (Ala.1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). The question is whether the offenses are of a same or similar character so that a person evaluating the crimes would believe that the offenses were committed by the same person. See King v. State, 518 So.2d 880 (Ala.Cr.App.1987).”
“ ‘630 So.2d at 95-96.’
“Gagliardi v. State, 695 So.2d 206, 207 (Ala.Cr.App.1996).”
728 So.2d at 181.
In Ex parte Tisdale, 990 So.2d 280 (Ala.2007), the Alabama Supreme Court discussed the “same or similar character” prong as follows:
“This Court discussed the ‘same or similar character’ basis for consolidation in Ex parte Pincheon, 751 So.2d 1219 (Ala.1999). Quoting Kennedy v. State, 640 So.2d 22 (Ala.Crim.App.1993), this Court stated:
“‘“Rule 13.3(a) is ‘patterned after Rule 8(a) of the Federal Rules of Criminal Procedure.’ H. Maddox, Alabama Rules of Criminal Procedure 405 (1990). In deciding consolidation claims under Rule 13.3, Ala. R.Crim. P., this Court has followed the case law interpreting Federal Rule 8. See, e.g., Hinton v. State, 548 So.2d 547, 554 (Ala.Crim.App.1988), affirmed, Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989); Langham v. State, 494 So.2d 910, 915 (Ala.Crim.App.1986). One noted commentator on the federal rules has observed:
“ ‘ “ ‘It is the “same or similar character” aspect of Rule 8(a) which has provoked the greatest controversy and proved the most difficult to interpret.... The arguments against this form of join-der are stronger than those against the other forms of joinder under Rule 8(a). When the government joins offenses based on the same acts or transactions or connected acts or transactions, the prosecution is spared the burden of proving the same set of facts more than once. There is no comparable saving of trial time when offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence. Thus, when totally unrelated, similar offenses are joined, defendant faces a “considerable” risk of prejudice.’
“ ‘ “8 Moore’s Federal Practice ¶ 8.05[1] at 8-17 and ¶8.05[4] at 8-21 to 8-22 (2d ed.1991) (footnotes omitted).
“ ‘ “As we observed in Jenkins v. State, 472 So.2d 1128 (Ala.Crim.App.1985):
“ ““ “Decisions applying the ‘same or similar character’ test have generally failed ‘to provide criteria which would provide guidance as to the precise scope of this rule.’ The view seems to be gaining acceptance, however, that the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense.” ’
“ ‘ “Jenkins, 472 So.2d at 1129 (quoting C. Wright, Federal Practice and Procedure: Criminal 2d § 143 (1982)).”'
“751 So.2d at 1222 (quoting Kennedy, 640 So.2d at 28-29) (emphasis added). Both this Court and the Court of Criminal Appeals have indicated that the most important consideration in determining whether criminal offenses can be consol *448 idated on the bastó that they are of the same or similar character is whether evidence of each offense would be admissible in a trial of the other. See Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989); Kennedy v. State, 640 So.2d at 29. See also Lewis v. State, 889 So.2d 623, 661 (Ala.Crim.App.2003) ('Thus, consolidation in this case was proper only if evidence of each offense would be admissible at a separate trial of each of the other offenses.’).”
990 So.2d at 283-84. Furthermore,
“ ‘[T]he “common scheme or plan” provision of Rule 13.3 is limited by the “common scheme or plan” exception to the rule excluding collateral crimes evidence. That is, multiple offenses alleged to have been committed by the same defendant may not be consolidated and tried jointly under the “common scheme or plan” provision of Rule 13.3 unless evidence of each offense would be admissible, under the “common scheme or plan” exception to the collateral crimes exclusionary rule, at a separate trial of the other offense. See King v. State, 518 So.2d [880,] 884 & n. 2 [(Ala.Crim.App.1987)]; Ex parte Hinton, 548 So.2d [562,] 566 [(Ala.1989)].’
“Kennedy v. State, 640 So.2d 22, 29 (Ala.Crim.App.1993). Thus, consolidation in this case was proper only if evidence of each offense would be admissible at a separate trial of each of the other offenses.
“ ‘On the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith. This is a general exclusionary rule which prevents the introduction of pri- or acts or crimes for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime or act was committed before or after the one for which the defendant is presently being tried....
[[Image here]]
“ ‘The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant’s bad character and conformity therewith on the occasion of the now-charged crime. If the defendant’s commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.’
“C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996) (footnotes omitted). The other purposes for which collateral-crimes evidence may be admissible, i.e., the exceptions to the exclusionary rule, include:
“ ‘ “(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.” ’
“Nicks v. State, 521 So.2d 1018, 1026 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 (Ala.1988), quoting Nelson v. State, 511 So.2d 225, 233 (Ala.Crim.App.1986), aff'd, 511 So.2d 248 (Ala.1987). These exceptions do not apply unless ‘there is a real and open issue as to one or more of *449 those “other purposes.”' Bowden v. State, 538 So.2d 1226, 1227 (Ala.1988).”
Lewis v. State, 889 So.2d 623, 660-61 (Ala.Crim.App.2003).
Furthermore, “ ‘the granting of a severance rests within the discretion of the trial court and its refusal to sever counts ... will only be reversed for a clear abuse of discretion.’” Gagliardi v. State, 695 So.2d 206, 208 (Ala.Crim.App.1996) (quoting Summerlin v. State, 594 So.2d 235, 236 (Ala.Crim.App.1991)). Rule 13.4(a), Ala. R.Crim. P., provides:
“If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.”
“An appellant who argues that the trial court abused its discretion when it refused to grant a severance must prove ‘compelling prejudice’ before he is entitled to relief. Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989).” Culver, 22 So.3d at 507. “A mere showing of some prejudice is not enough.” Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989). Moreover, “[n]o prejudice results where ... the jury could easily have kept separate the evidence of the separate crimes.” Id. at 566. See Snell v. State, 677 So.2d 786, 789 (Ala.Crim.App.1995).
In this case, we cannot say the trial court clearly abused its discretion in consolidating the charges for trial or in denying Hinkle’s motion to sever. The trafficking crime and the distribution crimes were of the same or similar character and involved similar conduct or where otherwise connected in their commission. See Rule 13.3, Ala. R.Crim. P. See also United States v. Taylor, 54 F.3d 967, 973 (1st Cir.1995) (“In determining whether counts are properly combined for trial, we historically have considered whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred.”), and United States v. Boulanger, 444 F.3d 76, 87 (1st Cir.2006) (“Joinder is proper if the offenses charged ‘are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.’ Fed.R.Crim.P. 8(a). We have construed this rule generously in favor of joinder. [United States v.] Meléndez, 301 F.3d [27,] 35 [(1st Cir.2002)]. Further, ‘ “[similar” does not mean “identical,” and we assess similarity in terms of how the government saw its case at the time of indictment.’ Id. (citing United States v. Edgar, 82 F.3d 499, 503 (1st Cir.1996)).”).
Here, the trafficking crime occurred close in time to the distribution crimes. The first distribution charge for which Hinkle was found guilty occurred on May 30, 2007; the last distribution charge for which Hinkle was found guilty occurred on July 5, 2007. The trafficking charge occurred on August 3, 2007. Thus, because the offenses shared sufficient similarities and because Hinkle has failed to show sufficient prejudice, no error occurred in consolidating the offenses for trial and denying the motion to sever. See Green v. State, 599 So.2d 631, 633 (Ala.Crim.App.1991) (holding that the consolidation of three indictments for trial was proper where the offenses charged in the indictments were of a similar character and “[t]he offenses charged in the 3 indictments allegedly occurred within a period of 16 days and could arguably be ‘connected in their commission’ within the meaning of [then] Rule 15.3(a)(ii), [Ala.] R. Cr. P. *450 Temp.”); Thomas v. State, 508 So.2d 310, 312 (Ala.Crim.App.1987) (holding that two indictments for felony possession of marijuana in 1984 and 1986 were properly consolidated for trial because the offenses were the same and were based on the same type of conduct by the same offender). See, e.g., United States v. Babbitt, 683 F.2d 21, 23 (1st Cir.1982) (cocaine transactions on two different dates “are of the same or similar character”); United States v. Lewis, 626 F.2d 940, 944-45 (D.C.Cir.1980) (same drug formed the basis for all four charges against defendant; court concluded that the four charges “are of the same or similar character”); Terry v. United States, 310 F.2d 715, 715 (5th Cir.1962) (where defendant unlawfully transferred marijuana to same persons on two different dates, joinder is proper since offenses were identical).
The offenses involved similar conduct on Hinkle’s part. The trafficking charge required that the State prove that Hinkle possessed the cocaine. When the State relies on constructive possession, it must adduce some facts or circumstances from which the jury could find beyond a reasonable doubt that the accused had knowledge of the presence of the drug. See Ex parte Story, 435 So.2d 1365, 1366 (Ala.1983). Shortly before the drugs were discovered in the vehicle in which Hinkle was a passenger, Hinkle sold the same drug, cocaine, to the same confidential informant who had informed the officers that Hinkle had received a large amount of narcotics and that he was armed. The offenses were clearly connected in time and fact because they involved the same drug— cocaine — the same confidential informant in all instances, and most of the same law-enforcement and investigating officers. See McLeod v. State, 581 So.2d 1144, 1151-52 (Ala.Crim.App.1990) (finding no error in the joinder of four counts of unlawful distribution of cocaine because all four offenses were clearly of the same character); Thomas, 508 So.2d at 312.
Additionally, “[n]o prejudice results where the jury could easily separate the evidence of the separate crimes.” Summerlin, 594 So.2d at 236. Nothing in the record suggests that the jurors were unable to separate the evidence relating to each case. Instead, the jury clearly separated the evidence of the separate crimes, as evidenced by the fact that it convicted Hinkle of two of the distribution offenses but acquitted him as to the other two distribution offenses. See Mobley v. State, 563 So.2d 29, 32 (Ala.Crim.App.1990) (“It is apparent that the jury did make an independent evaluation of each defendant and each charge. This is shown by the fact that the jury returned a not guilty verdict in the appellant’s favor for possession of marijuana, while also convicting him of trafficking in cocaine.”); Snell, 677 So.2d at 789-90 (“Clearly the jury separated the evidence of the separate crimes, as evidenced by the fact that it convicted Snell of the offense of sodomy, but not the offense of enticement.”); Culver, 22 So.3d at 510 (“The jury was most certainly able to separate the evidence of the four crimes because it convicted Culver only of the crimes involving possession of obscene matter.”).
Furthermore, we note that the trial court here instructed the jury thoroughly as to its duty to consider each case separately and to determine whether the State had met its burden of proof beyond a reasonable doubt in each case. (R. 417-21, 423-28.) “ ‘These instructions “minimized any possible prejudice” from the joinder’ of the [separate] counts. United States v. Meléndez, 301 F.3d 27, 36 (1st Cir.2002), quoting United States v. Natanel, 938 F.2d 302, 308 (1st Cir.1991).” Tariq-Madyun v. State, 59 So.3d 744, 750 (Ala.Crim.App.2010). See United States v. Taylor, 54 *451 F.3d at 974. Accordingly, we cannot conclude that the trial court erred in consolidating the trafficking charge and the distribution charges and in refusing to sever the charges.[4]
II.
Hinkle also claims error because, he says, the drugs seized from the vehicle in which he was a passenger were unlawfully obtained in violation of Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). More particularly, Hinkle contends that the search was illegal under Gant on. the grounds (1) that the search was not necessary for the officers’ own safety; and (2) that the officers could not have reasonably believed that a search of Massengale’s car would have uncovered evidence of the offense on which the arrest was made — trafficking. The State submits that the search of the vehicle in which Hinkle was a passenger was lawful under both the incident-to-a-lawful-arrest exception and the plain-view exception.
“ ‘ “This court has long held that war-rantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. See, e.g., Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App.1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985); Chevere, supra, 607 So.2d at 368.”'
“State v. Mitchell, 722 So.2d 814 (Ala.Cr.App.1998), quoting Rokitski v. State, 715 So.2d 859 (Ala.Cr.App.1997).”
State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999). Another recognized exception to the warrant requirement is the “automobile exception,” which allows law enforcement to search an automobile based on probable cause alone. Harris v. State, 948 So.2d 583 (Ala.Crim.App.2006).
'“Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may conduct investigatory stops of persons or vehicles if they have a “reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur. See generally Caffie v. State, 516 So.2d 822, 825-26 (Ala.Crim.App.1986), [affirmed], 516 So.2d 831 (Ala.1987).” Lamar v. State, 578 So.2d 1382, 1385 (Ala.Crim.App.), cert. denied, 596 So.2d 659 (Ala.1991). “Reasonable suspicion is a less demanding standard than probable cause,” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), requiring only that the detaining officers “have a particularized and objective basis for suspecting the person detained of criminal activity,” Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986).'”
State v. Davis, 7 So.3d 468, 470 (Ala.Crim.App.2008).
In State v. Gargus, 855 So.2d 587 (Ala.Crim.App.2003), this Court stated:
“ ‘ “ ‘When officers lawfully arrest an automobile occupant, they may search the passenger compartment of the automobile as a contemporaneous incident of the arrest, and they also may examine the contents of containers found in the automobile.’ ” State v. Otwell, 733 So.2d at 954, quoting United States v. Diaz-Lizaraza, 981 F.2d 1216, 1222 (11th Cir.1993). “This is so *452 even though the appellant was already handcuffed and placed in the police officer’s car when the appellant’s car was searched.” Mason v. State, 768 So.2d 981, 999 (Ala.Crim.App.1998), aff'd, 768 So.2d 1008 (Ala.2000), citing Gundrum v. State, 563 So.2d 27 (Ala.Crim.App.1990).'
“[Baird v. State,] 849 So.2d [223] at 229-30 [(Ala.Crim.App.2002)]. In Sheffield v. State, 606 So.2d 183 (Ala.Crim.App.1992), this Court stated:
“ ‘After arresting the driver of an automobile, an officer “may, as a contemporaneous incident of that arrest, search the passenger compartment” of that car, including “the contents of any containers found within the passenger compartment.” New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); Daniels v. State, 416 So.2d 760, 763 (Ala.Cr.App.1982). See also, State v. Calhoun, 502 So.2d 808 (Ala.1986).'
“606 So.2d at 187. Additionally, in Mason v. State, 768 So.2d 981 (Ala.Crim.App.1998), aff'd, 768 So.2d 1008 (Ala.2000), this Court stated:
“ ‘Even if we were to conclude that the search was not authorized pursuant to an inventory search, the trial court’s denial of the motion to suppress is due to be affirmed because the search of the appellant’s vehicle was lawful as a search incident to an arrest. Sheffield, 606 So.2d at 187. This is so even though the appellant was already handcuffed and placed in the police officer’s car when the appellant’s car was searched. Gundrum v. State, 563 So.2d 27 (Ala.Crim.App.1990).'
“768 So.2d at 999.”
855 So.2d at 590-591. Gargus and the cases cited therein relied on the rule in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which held “that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” Id. at 460. See also United States v. Davis, 598 F.3d 1259 (11th Cir.2010) (“As the Supreme Court later explained, its opinion in Belton was ‘widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search.’ Gant, [556 U.S. at 341,] 129 S.Ct. at 1718.”)
In Gant, however, the United States Supreme Court replaced the rule it had announced in Belton, holding that “[p]olice may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Gant, 556 U.S. at 351. This Court first addressed the applicability of Gant in State v. Jemison, 66 So.3d 832 (Ala.Crim.App.2010) (holding that United States Supreme Court’s decision in Gant, setting out circumstances under which police may search a vehicle incident to a recent occupant’s arrest, applied retroactively to the defendant’s case, which was pending on direct appeal, because the defendant’s conviction was not yet final). The rule in Gant also applies to Hinkle’s case. See Jemison. Thus, we must consider whether “(1) [the officers’] actions violated the rule announced in Gant, and, if so, (2) whether the exclusionary rule commands suppression of any evidence seized in violation of Gant.” Jemison, 66 So.3d at 846.
We first question whether the officers’ search of Massengale’s vehicle violat *453 ed Gant. In this case, the record indicates that, at the time of their arrests, both Massengale and Hinkle were at the back of the vehicle and were not within “reaching distance of the passenger compartment.” The officers, however, were justified in searching Massengale’s vehicle on the ground that they reasonably believed that they would find evidence related to the drugs Officer Quigley saw “in plain view.” The officers also had probable cause to believe that Hinkle had committed some drug-related offense given the information they had from a reliable confidential informant that Hinkle had a large amount of narcotics on him and that he was armed. See Worthy v. State, [Ms. CR-10-0044, April 29, 2011] — So.3d -, - (Ala.Crim.App.2011) (“‘Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.’ ” (quoting Woods v. State, 695 So.2d 636, 640 (Ala.Crim.App.1996))). Given the totality of the circumstances — the tip from the confidential informant that Hinkle had in his possession a large amount of narcotics and a gun, the discovery of a controlled substance in “plain view” at the driver’s feet during the traffic stop, the bulge under the passenger-side floor mat at Hinkle’s feet, and the subsequent discovery of Lortab pills and plastic baggies on the driver’s person — the officers could have reasonably believed that they would uncover evidence of drug possession, distribution, or trafficking in the vehicle in which Hinkle was a passenger. Accordingly, the officers did not violate the rule announced in Gant by searching Massengale’s car for evidence of drug-related offenses.
Moreover, “even if we were to assume that [the officers] violated Gant by searching [Massengale]’s vehicle after his lawful arrest, we do not believe the exclusionary rule should be applied to [the offieers]’s good-faith actions.” Jemison, 66 So.3d at 850. Notably, the United States Supreme Court recently held, as this Court did in Jemison, that when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply. Davis v. U.S., — U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Consequently, Gant affords Hinkle no relief with respect to his suppression claim.
III.
Hinkle contends that the trial court erred in denying him an evidentiary hearing on his assertion that he rendered “substantial assistance” to the police. Hinkle filed a “Motion to Enforce Agreement Pursuant to [§ ] 13A-12-232(b)[, Ala.Code 1975,] and to Continue Sentencing Hearing” on July 9, 2009. (C. 151-52.) The State filed an opposition to that motion. (C. 153-54.) The State contends that there is no adverse ruling on the issue and that there is thus nothing for this Court to review.
Pursuant to § 13A-12-232(b), Ala.Code 1975, the State may move the sentencing court to reduce or suspend the sentence of a person convicted of a violation of § 13A-12-231, Ala.Code 1975, if the person provides substantial assistance in the arrest or conviction of parties involved in the crime. Hinkle cites State v. Drewry, 519 So.2d 591 (Ala.Crim.App.1987), for the proposition that the State unintentionally failed to allow Hinkle to provide “substantial assistance” and the trial court unintentionally failed to hold an evidentiary hearing on this issue. According to Drewry, three conditions must be met before § 20- *454 2 — 81(b)[5] may be applied:
“First, there must be a defendant who has been found guilty or who has pleaded guilty to a trafficking offense. Second, the district attorney must have filed a motion under § 20-2-81(b), requesting that the sentencing court reduce or suspend the defendant’s sentence because of his having rendered assistance which the district attorney has determined to be ‘substantial assistance.’ Third, the sentencing court must itself find, before applying the provisions of § 20-2-81(b), that the assistance rendered was in fact ‘substantial assistance.’ ”
Hagedorn v. State, 570 So.2d 780, 780-81 (Ala.Crim.App.1990) (citing Drewry, 519 So.2d at 594).
In the instant case, the district attorney’s office did not file a motion pursuant to § 13A-12-232(b), requesting that the sentencing court reduce or suspend Hinkle’s sentence because of his having rendered “substantial assistance.” As stated in Drewry and as set forth in § 13A-12-232(b), the district attorney must move the sentencing court to reduce or to suspend the defendant’s sentence because of his having rendered assistance. Because no such motion was made here, the trial court did not err in failing to hold an evidentiary hearing on Hinkle’s motion seeking to apply § 13A-12-232(b).
IV.
Hinkle argues that his prior felony convictions should not have been used to enhance his sentence in this case. The State filed a notice of intent to use Hinkle’s prior convictions to enhance his sentence in the instant case under the HFOA. (C. 110-11.) Hinkle filed a posttrial motion opposing the use of the prior convictions for enhancement purposes. (C. 159-95.) The State filed an “Opposition to Defendant’s Motion to Exclude Prior Convictions.” (R. 196-99.) At the sentencing hearing, the trial court considered the motions filed, treated Hinkle’s motion as a Rule 32, Ala. R.Crim. P., petition, and denied that petition. (R. 446-57.) The trial judge stated:
“THE COURT: All right. I’ll get back to my original position in a minute. But even if he was illegally sentenced in the tax stamp cases, he would still have three prior felonies. Even if I set those sentences aside and sentenced him under the law, the cumulative time, he would still have three prior felonies, we’re still in the same boat as far as Habitual Felony Offender Act goes.
[[Image here]]
“THE COURT: You don’t need to go that far. All right. In regard to [Hin-kle’s] motion here, I am going to treat it as if it were a Rule 32, as I do many letters that I get sent from people incarcerated all the time. And then show that he’s indigent, I’m to waive that fee for a Rule 32, I’m going to consider it a Rule 32. And I’m going to deny the Rule 32, based upon the Court’s understanding of the present laws, in that this is not a jurisdictional issue[;] therefore, he is out of time in his filing of the Rule 32 on this issue.”
(R. 453, 456-57.)
The record shows that Hinkle has three prior convictions for distributing a controlled substance and two prior convictions for failure to affix a tax stamp. See §§ 13A-12-211 and 40-17A-4, Ala.Code 1975. The gist of Hinkle’s argument is that the sentences he received for the pri- or failure-to-affix-tax-stamp convictions *455 were illegal and that he should be allowed to withdraw his guilty pleas in those cases because his pleas were rendered involuntary. Therefore, he says, because he challenges the validity of those prior convictions, they could not be used for enhancement purposes in this case.
Initially, we note that Hinkle’s posttrial motions filed in the instant case were not the proper method of attacking the validity of the prior convictions used for enhancement purposes. Instead, the proper mechanism for challenging the pri- or convictions would be a timely filed petition for postconviction relief from those convictions in the court of conviction for the convictions being challenged. See Rule 32, Ala. R.Crim. P.; McMillian v. State, 905 So.2d 862, 863 (Ala.Crim.App.2005); Sturdivant v. State, 643 So.2d 1013, 1014 (Ala.Crim.App.1993); Crum v. State, 611 So.2d 495, 496 (Ala.Crim.App.1992). Further, it is well settled “that a defendant at his sentencing hearing cannot attack the validity of a prior conviction used to enhance his sentence as a habitual felony offender. E.g., James v. State, 681 So.2d 269, 269-71 (Ala.Cr.App.1996); McHarris v. State, 623 So.2d 400, 400-01 (Ala.Cr.App.1993).” Burgess v. State, 723 So.2d 742, 769 (Ala.Crim.App.1997). See also State v. Gagliardi, 747 So.2d 366, 367 (Ala.Crim.App.1999). Regardless, in this case, the trial court properly sentenced Hinkle under the HFOA because, even without the failure-to-affix-tax-stamp convictions, Hinkle had three prior felony convictions for the unlawful distribution of a controlled substance. See § 13A-5-9(e), Ala.Code 1975; § 13A-12-211, Ala.Code 1975. Thus, Hinkle is not entitled to relief on this claim.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WELCH, P.J., and WINDOM, KELLUM, and BURKE, JJ„ concur.

 Note from the reporter of decisions: On June 23, 2010, the Court of Criminal Appeals remanded this case by order. A return to that remand was filed on June 3, 2010. On September 1, 2010, that court again remanded this case by order.

. We note that Hinkle was charged with additional distribution of controlled substances offenses in case numbers CC-08-3173 and CC-08-3176; the jury found Hinkle not guilty of those charges.

. As noted earlier, Hinkle was found not guilty of two of the distribution charges. See supra note 1.

. We note that Hinkle’s motion to sever was untimely. See Rule 13.4(b), Ala. R.Crim. P. (“A defendant's motion to sever offenses ... must be made not more than seven (7) days after arraignment or filing of a written plea of not guilty prior to trial, or, in the event the court has ordered charges ... to be tried jointly pursuant to Rule 13.3, then within seven (7) days of the court's order, in any event, prior to trial.”). The trial court, however, ruled that it would consider the untimely motion to sever, and the following exchange occurred:
"THE COURT: There actually wasn't a hearing. I granted the State's motion without hearing. There wasn't an objection filed. The objection is now, I’m going to consider it timely filed. And I did consider at the time I granted the motion, to consolidate, the fact that all of these events were so closely related in time. And it is my understanding that in regard to the distribution cases, at least, that the same law enforcement agency is involved, as well as the same informant.
"[PROSECUTOR]: Yes, ma’am. It is the — in the distribution cases, they all involve the same informant. They all involve the same drug, which is crack cocaine, which is the drug of issue in the trafficking case. And they involve substantially the same officers. There are some differences, but the investigating officers are mostly the same on the trafficking case.
"THE COURT: As well as the distribution?
"[PROSECUTOR]: Yes, ma'am.
"THE COURT: And I do think the State presents a good argument in regard to the constructive possession issue, that actual possession is actually something that would be admissible in the case[-in-]chief in the trafficking case.”
(R. 7-8.)

. Hinkle did not raise on appeal the argument that the consolidation for trial of the unlawful-possession-of-marijuana charge and the tax-stamp charges was improper.

. Section 13A-12-232(b), Ala.Code 1975, was formerly § 20-2-81, Ala.Code 1975. It was transferred to § 13A-12-232 by Acts 1988, 1st Ex.Sess., No. 88-918, § 2(5), effective September 30, 1988.